GEORGE GILLIG *v.* BERTHA. MAASS and others.

28 191
152 163

On the 6th of November, 1851, B. M., the wife of M., was possessed of $5000 of separate personal estate, which her husband desired to use in his business. He owned certain real estate in fee, and to obtain the money, and to secure to his wife the repayment thereof, he gave his bond and mortgage to W., who on the same day assigned the same to B. M., on receiving the $5000 and paying it over to the husband. The mortgage was duly recorded, on the 8th of November, 1857. The assignment was not put on record until November 21st, 1857, when it was recorded in the clerk's office, in the book of mortgages. B. M., on the 3d of November, 1855, assigned this mortgage to S. On the 14th of February, 1852, an agreement in writing was made between W. and one J., by which, after reciting the fact of the execution of the mortgage to W. of November 6, 1851, and that W. was willing to enable M. "to take up more money, and to increase his credit upon the security of such premises," W. agreed that his mortgage should come after any mortgage that M. and wife might thereafter execute to J., for any amount less than $3000; and that any such mortgage should always have preference to, and be paid before, the said mortgage of W. This agreement was recorded in the clerk's office, in the book of conveyances, February 23d, 1852. On the 18th of February, 1852, M. and wife executed a mortgage to J., on the same premises, for $1500, which was recorded February 21st, 1852. Subsequently, the premises having been

sold upon the foreclosure of a prior mortgage, S. and J. claimed the sur-
plus moneys arising from the sale; the former as the assignee of B. M.,
and the latter in his own right.

*Held,* 1. That the mere circumstance of B. M. uniting with her husband in
the mortgage to J., it being done in ignorance of the fact that it was in-
tended to give such mortgage a preference over the one held by her, was
not a ground, in equity, for postponing her mortgage or rending it subor-
dinate to J.'s; the spirit and intent of the act, and of the instrument
which she executed, being to cut off her inchoate right of dower.

2. That the agreement between W. and J. of February 14th, 1852, did not
operate as a release of the mortgaged premises, the whole premises being
still covered by the W. mortgage, and continuing subject to it. That it
was a mere personal contract or covenant, good between the parties, if W.
had the right to make it.

3. That the revised statutes, relative to the proof and recording of convey-
ances of real estate, have no application to an instrument like that execu-
ted between W. and J. That it was a paper not entitled to record; and
J. acquired no rights by recording it; or if entitled to be recorded, it was
not recorded according to law, and hence its record was not notice even
to subsequent purchasers; nor did it confer any priority over B. M.'s
assignment, afterwards duly recorded.

4. That such paper should have been recorded in the book of mortgages, if
any where, to have made the record effectual as against subsequent *bona
fide* assignees or purchasers from the mortgagee. That recording the
paper in the book of deeds was not duly recording it, within the meaning of
the recording acts, so as to be constructive notice to a subsequent mortgagee
in good faith, or to affect a conveyance subsequently but duly recorded.

5. That S. the assignee and holder of the senior mortgage, executed by M.
to W. on the 6th of November, 1851, was entitled to the surplus moneys;
that mortgage being prior in date and in record, and still retaining its orig-
inal priority in the hands of S., and B. M.'s rights and those of her assignee,
not being affected by the attempted record of the agreement between W.
and J.

APPEAL from an order of the Supreme Court for the pay-
ment of surplus moneys in a mortgage foreclosure suit. The
fund amounted to $1859.99; and the only claimants were
the defendants, David Jones and Joseph T. Schmidt, each
of whom claimed the whole. The facts are these: On the
6th of November, 1851, August F. Maass executed, together
with his wife, a mortgage to Julius Walber, on certain real
estate in Williamsburgh, to secure the payment of the bond
of Maass for $5000 with interest. The principal was ex-

pressed to be payable on the 6th of November, 1857. This mortgage was duly recorded on the 8th of November, 1851. By an assignment corresponding in date to the mortgage, Walber transferred the same to Mrs. Bertha Maass, one of the mortgagors. The consideration of this assignment and transfer was the payment of $5000 in gold of her separate personal estate. The instrument of assignment was not put on record until the 21st of November, 1853, when it was recorded in the Kings county clerk's office in the book of mortgages. Afterwards, Bertha Maass assigned this mortgage, by an instrument dated and acknowledged November 3d, 1855, to the claimant, Joseph T. Schmidt.

On and about the 14th of February, 1852, an agreement in writing was entered into between Walber and the claimant Jones, which, after reciting the fact of the execution of the mortgage to Walber, of the date of 6th November, 1851, proceeds thus : " And whereas the said Julius Walber is willing to enable the said August F. Maass to take up more money, and to increase his credit upon the security of said premises : Now in consideration of the premises and of the sum of one dollar in hand paid to said Walber by said Jones, the receipt whereof is hereby acknowledged, said Walber agrees that his said mortgage, above described, shall come after any mortgage that said Maass and wife may hereafter execute to said Jones for any amount less than three thousand dollars ; and such mortgage or mortgages hereafter to be made and executed in favor of said Jones for any amount less than three thousand dollars, shall always have preference before the said mortgage of Walber above described, and shall always be paid before said $5000 mortgage held by Walber." This agreement was recorded in the clerk's office of Kings county, in the book of *conveyances,* on the 23d of February, 1852.

On the 18th of February, 1852, Maass and wife executed a mortgage to the claimant Jones on the same premises, which

were a brewery, to secure the payment of Maass' bond to Jones for $1500 and interest, on or before the 30th of September, 1852 ; which mortgage was acknowledged on the 19th of February, 1852, and recorded on the 21st of February, 1852. This mortgage, by agreement between Jones and Maass, was given to secure Jones, (who was a maltster,) for advances of malt and hops furnished by him, or to be furnished to Maass, (a brewer,) and any indebtedness of Maass to Jones, by reason of malt and hops furnished him before or after the date of the mortgage. Mrs. Maass, at the time of joining in the execution of this mortgage, had not any knowledge or notice of, nor was she in any way privy to, the agreement between Walber and Jones, or the fact that Jones's mortgage was intended to have a preference over that held by her. No statement was made or any act done by her which misled or deceived Jones ; and the latter took the agreement from Walber without requiring the production, at the time, of the bond and mortgage that had been given to him.

Jones commenced dealing with Maass in November, 1851, by furnishing him malt and hops on account ; and he made advances of malt and hops to Maass, until the death of the latter, which occurred in November, 1853. The amount of Maass' indebtedness to him at the date of his $1500 mortgage, was $2178.59. After the mortgage was given, and from its date to Maass' death, Jones advanced to him some $7823, and Maass paid in cash on the account some $7357, leaving but about $465 of all the subsequent advances unpaid. After September 30th, 1852, the date of the maturity of his mortgage, Jones received from Maass on account some $6300.

The surplus moneys claimed arose upon the foreclosure and sale under a prior mortgage of the same premises mortgaged to Walber in November, 1851, and to Jones in February, 1852 ; the defendant Schmidt claiming as the assignee of Mrs. Maass, and the defendant Jones, in her own right.

The court at special term made an order declaring Jones entitled to the surplus moneys, and directing them to be paid

to him, and that the costs of the proceeding be paid by Schmidt.

On appeal to the general term this order was reversed; and it was further ordered that the moneys be paid to the claimant Schmidt, and that Jones pay the costs of the appeal, which were fixed at $20.

From this order of the general term Jones appealed to this court.

*A. J. Parker,* for the appellant.

I. Regarding Mrs. Maass as the bona fide holder of the Walber mortgage at the time of her executing the mortgage to Jones of the same property, "with all her estate, title and interest, claim and demand, at law and in equity, in and to the mortgaged premises," she can not be allowed in equity to set up the Walber mortgage to the prejudice of Jones. The necessary effect of her uniting in the mortgage, duly acknowledged according to the statute, is to postpone or render subordinate her mortgage to his. This is no separation of the debt from the security, which was the ground of the decision in *Aymar* v. *Bill,* (5 John. Ch. R. 570.) The later decision, of *Williams* v. *Thorn,* (11 Paige, 459, 465,) is expressly in point. Whatever right she had, whether fee, dower or lien, open or secret, legal or equitable in the premises, was covered by the words as it was the spirit and intent of the mortgage. (*Jackson* v. *Willard,* 4 John. 41; *Otter* v. *Lordvaux,* 39 Eng. Law and Eq. 611; *Mickles* v. *Townsend,* 18 N. Y. R. 575.)

II. Mrs. Maass concealing the existence of her unrecorded assignment, and not only assenting to but joining in the mortgage to Jones, on the faith of which Jones made the advances, is estopped from setting up her claim to defeat his mortgage. (1 Story's Eq. Juris. § 390; *Lee* v. *Porter,* 5 John. Ch. 271; *Storrs* v. *Barker,* 6 id. 167; *L'Amoreux* v. *Vischer,* 2 Comst. 281.) The referee finds that this neg-

lect of her's misled and deceived Jones as to the ownership of the Walber mortgage, and such was its natural and legal effect.

III. By leaving the mortgage standing on the record in the name of Walber, Mrs. Maass authorized any person to deal with him as the owner. (1 Story's Eq. Juris. § 390; *James* v. *Johnson,* 6 John. Ch. 417, 427; *Vanderkemp* v. *Shelton,* 11 Paige, 28, 38; *Reed* v. *Marble,* 10 id. 409; *N. Y. Life Ins. and Trust Co.* v. *Smith,* 2 Barb. Ch. 82.)

IV. The assignment by Walber to Mrs. Maass not being recorded, was void as against Jones' mortgage, first recorded. (See recording act, 1 R. S. 756, §§ 1, 2, 43, 44.) In *Vanderkemp* v. *Shelton,* (11 Paige, 28,) it is held that the revised statutes of 1830 extended the recording act to assignments of mortgages. The case of *James* v. *Morey,* (2 Cowen, 246,) referred to by Judge Emott, was prior to the law of 1830 requiring assignments of a mortgage to be recorded. (See note to 2 Barb. Ch. R. 82, 84.)

V. It was immaterial as to Mrs. Maass whether the agreement between Jones and Walber was recorded. It is only against a *subsequent* purchaser from Walber, without notice, that this record would be material. (*Mills* v. *Comstock,* 5 John. Ch. 214, 221.) But the agreement was duly recorded as a conveyance. (Recording act, 1 R. S. 756, §§ 1, 2, 38.) It is within the terms of § 38, as an instrument by which the title to real estate may be affected in law or equity. It is absolute in its terms and not intended as a mortgage. It is a release of a priority, not conditional but absolute. In *Vanderkemp* v. *Shelton,* (11 Paige, 28,) referred to by Judge Emott, the question as to the recording as a conveyance was not raised. The cases cited by Judge Emott are mistaken; the case cited as 18 John. 544, is *Beekman* v. *Frost,* the same on appeal as 1 John. Ch. 300, (not 30,) but page 554 cited by the judge is the argument of counsel, which is overruled, page 563, where the court hold, with the

Chancellor, that the record though erroneous, where the error was that of the clerk, was good for the amount stated in it; and that the party was not to be prejudiced by the mistake of the clerk.

VI. The special term correctly held, that the payments by Maass to Jones subsequent to the maturity of the mortgage to Jones were not applicable on account of the mortgage. It distinctly appears that these payments were on account of further sales from Jones to Maass. As this is an appeal from an *order* after judgment, and not from a *judgment*, the facts are reviewable in this court as well as the law. We are not confined to the findings of the referee. (*Bates* v. *Voorhees*, 20 N. Y. R. 525, 8; *Griscom* v. *Mayor of N. Y.* 2 Kern. 586, 8; Code, § 272, 268, 348.) The creditor has the right to apply a general payment to either of several demands against his debtor, as he elects. (*Pattison* v. *Hull*, 9 Cowen, 747, 765; *Van Rensselaer* v. *Roberts*, 5 Denio, 470.) And such appropriation is binding on all parties, whether principals, sureties or guarantors. (*Allen* v. *Culver*, 3 Denio, 290.)

VII. The referee erred in not permitting the counsel for Jones to read from the ledger the debit side of the account of Maass, after the counsel for Mrs. Maass had procured the introduction of the ledger and had read the credit side of the account. Also in not permitting the counsel for Jones to prove what became of the property covered by the chattel mortgage, and whether he had received any payment on account of the chattel mortgage. The inquiries made on the other side had made the proposed explanation necessary and proper.

VIII. The order should be reversed and an order made giving the surplus to David Jones on his mortgage, with costs. If the court think it is not a proper case for a final order of reversal, then a further reference should be ordered with a view to ascertaining further facts.

*M. L. Townsend*, for the respondent Schmidt.

I. The mortgage to Walber (now in the hands of the respondent Schmidt) is prior in date and prior in record to that given to the appellant Jones; and still retains its original priority in the hands of the respondent. This mortgage and the bond accompanying it were assigned by Walber to Mrs. Maass, November 6, 1851, by assignment in writing duly acknowledged, and for the consideration of $5000 cash paid by her to Walber. This assignment was recorded in the book of mortgages November 21, 1853; and the bond and mortgage were assigned by her to the respondent by assignment in writing, November 3, 1855.

II. The assignment by Walber to Mrs. Maass vested in her the whole legal and equitable title to the bond and mortgage; and it was only necessary for her to record that assignment, (if at all,) to protect herself against a subsequent *assignment* of the bond and mortgage by Walber to a purchaser, whose assignment should be first duly recorded, and who should purchase in good faith and for a valuable consideration, (within the meaning of the recording acts.) (1 R. S. 756, § 1.) It was not *necessary* for her to record the assignment, in order to protect herself against a subsequent conveyance or mortgage from Maass, for the recording statutes only apply to *successive purchasers* from the same seller. (*Raynor* v. *Wilson*, 6 Hill, 469.) And the record of the assignment of the mortgage would only be constructive notice of such assignment, as against subsequent assignees of the mortgagee. (*N. Y. Life Ins. &c. Co.* v. *Smith*, 2 Barb. Ch. R. 82.)

III. The agreement between Walber and Jones of the 14th February, 1852, is not an *assignment* of the bond and mortgage to Jones, nor can it be regarded as an assignment of any interest in the mortgage, within the meaning of the recording acts, so as if properly first recorded to render void the prior unrecorded assignment to Mrs. Maass. The agree-

ment does not by its terms, (nor did the parties intend that it should,) transfer to Jones the bond secured by the mortgage, nor any interest in it; "an assignment of a mortgage without the debt is without meaning and void." (4 Kent, 194, and cases there cited; *Aymar* v. *Bill*, 5 John. Ch. R. 570.) A purchaser within the meaning of the registry act, "must acquire the *legal* title, as well as an equitable *right* to the property." (*Peabody* v. *Fenton*, 3 Barb. Ch. R. 451.) Jones, by this agreement, got no title to the bond and mortgage—no legal title, because of the terms of the agreement, and because the debt could not reside in one person while the security was in another—no equitable title or right, because the agreement was a fraud upon Mrs. Maass who owned the bond and mortgage and had them in her possession at the time, and who was not privy to the agreement, and had no knowledge of it.

IV. Jones, by this agreement, (if he can be regarded as a *purchaser*,) was not a *bona fide purchaser*, in good *faith*, within the meaning of the recording act. At the time this agreement was made Mrs. Maass had the bond and mortgage in her possession; they were chattels, no written assignment was necessary to transfer them. Jones did not therefore use proper diligence and care in treating with Walber, as the owner, without requiring the production by Walber, at the time, of the bond and mortgage; the highest evidence of his title, if he had any. As is said in *James* v. *Morey*, (2 Cowen, 289,) "The registry of the original mortgage was notice to him of its existence. If he will deal without asking for the mortgage, he comes, without a semblance of equity, to demand that the prior *bona fide* assignee shall be postponed to his claim. When the mortgagee makes a second assignment, the assignee knows that a prior assignment may have been made, and consequently must, as to that fact, repose on the integrity of his assignor. If he should be deceived, it is more equitable that he should suffer than to divest the right of the first assignee, who had acquired the legal estate." In

*Brown* v. *Blydenburgh,* (3 Seld. 141,) the holder of a bond and mortgage assigned them to a third person to secure a loan, (the assignment was not recorded,) and subsequently received from the mortgagor a conveyance of the premises, and executed a discharge of the bond and mortgage. The court held, not only that the land still continued subject to the mortgage, but say, "that if the conveyance was made, and the discharge received, *without the production of the bond and mortgage,* this circumstance was a suspicious one and sufficient to put the mortgagor upon inquiry, and unexplained, to render him chargeable with knowledge of the fraud, and in equity still liable upon his bond." And we respectfully submit that the view taken by the court below, in the opinion at general term, does not answer this point; for although the referee may have found that Jones took his agreement with Walber and the mortgage from Maass in *good faith,* the question is one of *law,* dependent upon all the circumstances, and the finding of the referee would not be conclusive; moreover, it is evident that the referee, by his finding, means merely that Jones took the agreement with Walber in *good faith,* in that he *supposed* that Walber was the owner of the prior mortgage and had a right to make the agreement, and that he took the mortgage in *good faith* in that he supposed he had obtained priority by virtue of the agreement. But the fact that Walber had not the bond and mortgage in his possession at the time was enough to put Jones upon inquiry, and renders his transaction with Walber wanting in the element of *good faith* in law.

V. Jones is not a *purchaser* for a *valuable consideration,* within the meaning of the recording act. . The object of the Walber agreement, as expressed in the recital, was "to enable Maass to take up more money, and to increase his credit upon the security of the premises;" or, as appears from the testimony in the case, to enable Maass to obtain a credit from Jones for malt and hops, to be advanced by Jones to Maass subsequently. Walber, in effect, agrees that if Jones fur-

nishes the credit, by making the advances to Maass, and Maass and wife shall execute a mortgage to him for that purpose, that mortgage so executed shall have priority. Jones by subsequently taking the mortgage, and fixing the amount with Maass at $1500, and the time for its payment September 30, 1852, himself fixed the amount of credit he was willing to give Maass, and limited the time of the credit. The agreement which Jones made with Maass at the time he took the mortgage, as to the purposes for which he was to hold it, as testified to by Jones and found by the referee, viz. "to secure Jones for advances of malt and hops furnished by him, or to be furnished, to Maass, and any indebtedness of Maass to Jones by reason of malt and hops furnished him, before or after the date of the mortgage," was not in accordance with the Walber agreement. The agreement of Walber was a *voluntary* surrender of his right to priority, for an *expressed* purpose, to wit, to give Maass a *credit* for a *specified sum*, and for a *specified time*, (as fixed by Jones and Maass in the mortgage.) It was not to pay or secure an old indebtedness of Maass to Jones, for malt and hops previously furnished, to the amount of $2178.59, which Walber had no knowledge of, nor to secure "*any* indebtedness of Maass to Jones by reason of malt and hops furnished," or credit given for an *indefinite* length of time. The relation of Walber to Jones by the agreement between them became that of surety for Maass' benefit, and before Jones can claim any right at law or in equity, even against Walber, the agreement must be strictly complied with by Jones. The agreement, therefore, which Jones made with Maass, under which he now claims to hold his mortgage, is a fraud upon Walber, and gives Jones no right in *equity* to set up his mortgage against the Walber mortgage, and to ask that the latter (whether in the hands of Walber or his assigns) should be postponed to the former. In so far, at least, as he took and now claims to hold the mortgage to secure the antecedent debt of Maass of $2178.59, he can not claim the protec-

tion of the recording act, and can not hold it, as security for that indebtedness, as against even Walber; much less against Mrs. Maass or her assignee, the respondent. (*Dickerson* v. *Tillinghast,* 4 Paige, 215.)

VI. The Walber agreement was not the subject of record; and its record could give Jones no rights thereby. This agreement was not a conveyance, either absolute or conditional, of real estate. Walber, as mortgagee, had no interest in the estate which he could convey, (4 Kent, 163, and cases there cited,) and the agreement did not by its terms, and could not grant or convey to, or vest in Jones, any right, title or interest, in the premises. We have shown that the agreement was not an assignment of the bond and mortgage, nor of any interest in it. But the learned judge, in his opinion at special term, says, "that it operated as a *release* to Jones of the mortgaged premises to the extent of his mortgage." If this be so, it is not benefitted by the recording act, for that act applies only (if at all) as between two *assignments* of the bond and mortgage, and not as between an *assignment* of the bond and mortgage and a conveyance, or a *release* of the mortgaged premises. But how can the agreement operate as a release of the mortgaged premises? The whole premises were still covered by the Walber mortgage, and continued subject to it—no specific portion of them was, by this agreement, taken out, granted, bargained, sold or *released* to Jones. The premises consisted of *four* lots—which one was released from the effects of the Walber mortgage? or what portion of the debt was not secured by the mortgaged premises? As respects the agreement, it was a personal contract or covenant, (good between the parties, if Walber had a right to make it,) but in no way affecting the *title to real estate,* nor benefitted by the recording act. The following cases are cited as furnishing some authority upon this point: In *Jackson* v. *Hopkins,* (18 John. 487,) it is held, that a power of attorney to demand and receive a debt secured by a mortgage, and to execute a release and

discharge thereof, is not within the (then recording) act concerning deeds. In *Jackson* v. *Richards*, (6 Cowen, 617,) a deed to A. was executed and recorded, and afterwards she put on record an instrument stating that she never accepted it—held a paper not entitled to record. In *Williams* v. *Bishop*, (Hoff. Ch. R. 359,) it is held, that a power to assign mortgages, is not within the registry act, and its record is neither evidence nor notice. The record as a deed of an absolute deed, intended as a mortgage, is not notice to a subsequent grantee or mortgagee. (*White* v. *Moore*, 1 Paige, 551; *Dey* v. *Dunham*, 2 John. Ch. 182; *N. Y. Life Ins. Co.* v. *White*, 17 N. Y. Rep. 469.)

VII. It was not necessary for Mrs. Maass to have recorded the assignment by Walber to her, in order to protect herself against the subsequent agreement between Walber and Jones, even if that agreement can be construed as an "*assignment*" of the mortgage, or an interest in it, as held by the general term. The recording statutes do not declare a prior unrecorded "assignment of a mortgage," void as against a subsequent assignment first recorded; and the act must be construed strictly. Before the revised statutes of 1830, the record of an assignment of a mortgage was not notice to any one of its existence, (*James* v. *Morey*, 2 Cowen, 246,) while now, if such an assignment comes within the statutory definition of "conveyance," (1 R. S. 762, § 38,) yet, the preference over the holder of a prior unrecorded *conveyance* given by the same statute, is only to a purchaser of "*real estate*" conveyed by such "*conveyance*" and not to a purchase of the "*conveyance*," which an assignee of a mortgage would be, (1 R. R. 756, § 1;) and what is meant by "*real estate*" is defined in the same statute (1 R. S. 762, § 36,) as "lands, tenements and hereditaments," which does not include mortgages. We submit that these considerations are overlooked by the general term, and by the Chancellor in *Vanderkemp* v. *Shelton*, (11 Paige, 28.) No necessity exists for recording an assignment of a mortgage. The mortgage is itself a

chattel, (*Power* v. *Lester*, 23 N. Y. Rep. 531;) no written assignment is necessary to pass the title. It may be transferred by mere delivery; and possession furnishes the highest evidence of title.

VIII. But if the Walber agreement was the subject of record, it should have been recorded in the book of mortgages, instead of conveyances; and its record in the book of conveyances is not notice, and gives Jones no rights, by virtue of the record. If the recording acts can be enlarged so as by construction to make them apply to assignments of mortgages, then, by the same power of construction and with greater reason, assignments of mortgages, (if recorded at all,) should be recorded in the book of mortgages, and every subsequent assignment, or *quasi assignment*, (Walber agreement,) in order to defeat the prior assignment by virtue of the recording act, must be recorded in the same book. This has been the universal practice since assignments of mortgages have been recorded—no layman, much less a lawyer, ever thinks of looking in the book of *conveyances* to see if a *mortgagee* has made an assignment of his mortgage. (*Vanderkemp* v. *Shelton*, 11 Paige, 28.) It is well settled, that if a deed is not authorized or required to be recorded, or if the registry is not in compliance with the law, the act of recording is a nullity, and then a subsequent purchaser is affected only by such actual notice as would amount to a fraud. (1 Story's Eq. Jur. § 404; *Frost* v. *Beekman*, 1 John. Ch. 300; 18 John. 544; *Astor* v. *Wells*, 4 Wheat. 466; *N. Y. Life Ins. Co.* v. *White*, 17 N. Y. Rep. 469.) The recording as a deed, of an absolute deed, intended as a mortgage, is not notice to a subsequent grantee or mortgagee. (*White* v. *Moore*, 1 Paige, 551; *Dey* v. *Dunham*, 2 John. Ch. 182; *Warner* v. *Winslow*, 1 Sandf. Ch. 430; *James* v. *Morey*, 2 Cowen, 246.) If an absolute conveyance and the defeasance be recorded in the book of deeds, they are not constructive notice of the mortgage. (*Jackson* v. *Van Val-*

*kenburgh,* 8 Cowen, 260; *Brown* v. *Dean,* 3 Wend. 208; *Grimstone* v. *Carter,* 3 Paige, 421.)

IX. The mere act of Mrs. Maass, in joining with her husband in executing the mortgage to Jones, did not estop her (much less her assignee Schmidt) from claiming priority over Jones. (*a.*) As *owner* of the Walber mortgage *merely,* she had no interest in the property which she could mortgage; a mortgagee's interest is but a chattel interest. (*Power* v. *Lester,* 23 N. Y. Rep: 527, &c.; 4 Kent's Com. 163, 7th ed. &c.; *Waring* v. *Smith,* 2 Barb. Ch. 119; *Astor* v. *Miller,* 2 Paige, 68.) (*b.*) Her husband being the owner of the fee of the premises, her only interest therein was an inchoate right of dower, which is all she conveyed by joining with her husband in the mortgage to Jones. (*c.*) The referee finds as matter of fact, "That Mrs. Maass did not have any knowledge or notice of, nor was she in any way privy to the agreement between Walber and Jones, or the fact that Jones' mortgage was intended to have a preference over that held by her." She did not, therefore, act in *bad faith* in *not stating* to Jones that she held the Walber mortgage. The law will not presume a fraudulent intent on her part by her mere *silence,* under such circumstances. Jones did not suppose that he was getting from her any thing more than her inchoate right to dower — the mortgage was given to secure her husband's bond, and not her own. Jones had already, as he supposed, bought of Walber the right of priority, and therefore could not have acted on the belief that he was buying that of her, which he now claims she is estopped from setting up; he paid her nothing for it. (*Power* v. *Lester,* 23 N. Y. Rep. 527; see *Aymar* v. *Bill,* 5 John. Ch. 570.) The first decision of the referee was therefore properly reversed by the general term. But the learned judge in his opinion at special term says, "that Jones was justified in treating with Walber, because he was the apparent (recorded) owner." But how was Jones *justified?* Mrs. Maass was the *real owner* of the mortgage, and had it in her possession. Her

omission to record the assignment was no fraud—it deprived
her of no right, except as against a subsequent *assignment*
first duly recorded—it conferred no right upon Walber to
treat with Jones, in relation to the mortgage, nor upon Jones
to treat with him, unless he should comply strictly with the
registry act; and then he would be justified by the *law* and
not by his *faith* in Walber.

X. Assuming that the mortgage to Jones obtained priority
over the mortgage to Walber, by virtue of the Jones and
Walber agreement or otherwise, that priority is gone and
the mortgage extinguished as against the mortgage to Walber
by reason of the payments made by Maass to Jones upon the
account which the mortgage to Jones was given to secure;
and the decision of the referee in his second report is correct.
It appears that the account between Maass and Jones was
continued as a running account from the commencement of
his dealings with Maass until his death, and a pass book
kept which was balanced monthly, and that Maass made pay-
ments upon the running account from time to time, amount-
ing in all to $7367.78. If the cash payments made by
Maass are applied to the advances subsequent to the date of
the $1500 mortgage, it will leave but $465.38 of those ad-
vances unpaid. Since the maturity of the $1500 mortgage,
Maass paid in cash upon the account $6301.73, a sum more
than sufficient to satisfy the mortgage, and the old debt of
$2178.59. Walber, by his agreement, had surrendered his
right to priority, only "for the purpose of enabling Maass to
take up more money and to increase his credit," his lien con-
tinued, and attached itself as against Jones' mortgage, the
moment the object of Walber's agreement was accomplished.
Walber, by his relation to Jones as surety, or even as a
junior mortgagee or incumbrancer, would have had the right,
whether before or after the maturity of Jones' mortgage, to
have paid to Jones the amount of the advances ($1500) and
to have had the mortgage satisfied or assigned to him, or he
be subrogated to the rights of Jones under it. Jones had

no right, as against Walber or his assigns, to continue and enlarge a credit with Maass indefinitely. If he could do so, he has no right to ask that the lien of the Walber mortgage should be postponed until it should suit his convenience or interest to close his account with Maass. The principle contended for by the appellant's counsel, would place the rights of the holder of the Walber mortgage at the mercy of Jones' account books. The learned, judge at special term, in overruling the referee as to the effect of the payments made by Maass to Jones, seems to lose sight of the Walber agreement, and of his relation to Jones thereby, and seems to determine the rights of Walber or his assigns, by the agreement between Jones and Maass, which Walber never assented to, and had no knowledge of.

It is submitted that Jones' rights, as against Walber, must depend upon the agreement he made with Walber— that Walber's rights were not the subject of barter by Jones and Maass, and that the risghts of Mrs. Maass or her assignee, the claimant Schmidt, can not be defeated by the fraudulent acts of either Walber, Jones or Maass, or the three together. When Jones had made advances to the amount of $1500, and Maass had *credit* to that amount and these advances were paid, by Maass, the object of the Walber agreement was fully accomplished, and it was *functus officio.* (*Craig* v. *Tappin,* 2 Sandf. Ch. 78; *Bank of Utica* v. *Finch,* 3 Barb. Ch. 293; *Truscott* v. *King,* 2 Seld. 147.)

X. The mortgage now held by the respondent is entitled to priority, and the order of the general term should be affirmed, with costs.

WRIGHT, J. The claimants are the holders and owners of mortgages, subsequent in order of time to that under which the mortgaged premises were sold, and the surplus fund realized. The mortgage under which Schmidt claims was

executed and duly recorded in November, 1851 ; and that of the claimant Jones, in February, 1852. If this were all, the mortgage of Schmidt being prior in date, and prior in record, to that given to Jones, the right of Schmidt to the fund would be clear. It is contended, however, by Jones, that the original priority or preference of lien of the mortgage held by Schmidt, as assignee, was, by agreement with the mortgagee, postponed to his mortgage, and that consequently he is entitled to stand in the place of the owner or assignee of the first mortgage in respect to the surplus moneys. This is met by the allegation that at the time the agreement was made with the original mortgagee, he was not the owner of the mortgage, or having any interest therein, he having assigned the same to a *bona fide* purchaser ; and that neither the agreement for preference was entered into, nor the mortgage of Jones given, under circumstances that either legally or equitably conclude such assignee or purchaser from insisting on the right of priority.

The mortgage just given and recorded was to one Julius Walber, who, simultaneously with its execution, assigned it to Mrs. Bertha Maass, for a valuable consideration. Walber really never had any interest in the mortgage. Mrs. Maass was possessed of $5000 of separate personal estate, which her husband desired to use in his business. He was the owner in fee of real estate in Williamsburgh, and to obtain the money, and secure her, he gave his bond and mortgage to Walber, the latter assigning the bond and mortgage to Mrs. Maass, on receiving the $5000 and paying it over to the husband. This was undoubtedly the true nature of the transaction, and shows that Walber, though nominally the creditor and mortgagee, had no real interest, and that Mrs. Maass was a purchaser in good faith and for value. There is not the slightest ground to impute fraud or bad faith to Mrs. Maass, either in the inception of her mortgage or its assignment. In November, 1851, therefore, she was the assignee of the Walber bond and mortgage for value and in good-

faith. Her assignment was not placed upon record until some two years afterwards; nor was it necessary in order to protect herself against a subsequent mortgage or conveyance from Maass, for the recording statutes only apply to *successive purchasers* from the same sellers, (*Raynor* v. *Wilson,* 6 Hill, 469,) and the record of the assignment of the mortgage would only be constructive notice of such assignment, as against subsequent assignees of the mortgagee. (*N. Y. Life Ins. Co.* v. *Smith,* 2 Barb. Ch. R. 82.) The omission to record it would be no fraud upon a junior mortgagee, nor estop her from setting up her claim to defeat his mortgage.

Some four months after the Walber mortgage had been given, recorded and assigned to Mrs. Maass, Maass, who was dealing with Jones in malt and hops, and who was indebted to him, and desired further credit, entered into an arrangement by which he was to give Jones a mortgage as security for present indebtedness and further advances. But Jones knew of the existence of the prior mortgage, and that it was a subsisting lien; and, moreover, that any subsequent mortgage he might take would be of little value as a security, without priority of lien. Accordingly he enters into an agreement in writing with Walber, in which for a nominal money consideration, and for the purpose of enabling Maass, as the writing expresses it, to take up more money and to increase his credit upon the security of the mortgaged premises, Walber agrees that the mortgage of November, 1851, (then owned and possessed by Mrs. Maass,) should come after any mortgage that Maass and wife thereafter might execute to Jones, for any amount less than three thousand dollars, and that such mortgage thereafter to be made in favor of Jones, should always have preference before the mortgage of November, 1851, and should always be paid before said $5000 mortgage. This agreement was followed by the execution to Jones of a mortgage by Maass and wife to secure the bond of Maass to Jones for the payment of $1500 and interest, on or before

the 30th of September, 1852. The mortgage was recorded on the 21st of February, 1852, and the written agreement of Walber two days afterwards, in the book of conveyances, in Kings county clerk's office. Although Mrs. Maass united in the execution of this mortgage, it is found by the referee (and the evidence fully sustains the finding) that she had no knowledge or notice of, nor was she in any way privy to the agreement between Walber and Jones; nor did she know or understand that Jones' mortgage as intended to have a preference over that held by her. In short, that at the time of joining in the execution of the Jones mortgage, she was entirely ignorant of any arrangement or agreement to give it a preference over his own, or of the fact that it was intended to have a preference; nor was she a party or privy in any way to the arrangement between Jones, Walber and Maass. No statement was made or act done by her which misled or deceived Jones as to the ownership of the Walber bond and mortgage; and he took the agreement from Walber without requiring the production, at the time, of the papers. If Jones was deceived at all, as to such ownership, it was by Walber and Maass, the former holding himself out as owner, when he knew that he had no title or interest either in the debt or in the security. The mere fact of Mrs. Maass uniting with her husband in the mortgage to Jones, under these circumstances, is not a ground in equity for postponing or rendering subordinate her mortgage to his. The spirit and intent of the act, and of the instrument which she executed, was to cut off her inchoate right of dower. This was the effect of the deed, and all that was within the contemplation of the parties. The debt was the husband's, and the premises mortgaged were his; he was the mortgagor in fact, and she united in the deed, not to transfer any present right, but to cut off or convey an inchoate interest, as the wife of the mortgagor in the premises mortgaged. Of course, a mortgagor of premises, who himself holds a mortgage thereon at the time he mortgages his interest in the premises to another, can not

set up such prior mortgage, or any interest he has acquired under the same, against his own mortgagee, or any person claiming under him. But Maass was the mortgagor, in this case, and it was his premises that were mortgaged to Jones.

At the time therefore the Jones' mortgage was given and recorded, Mrs. Maass, the assignor of the claimant Schmidt, was the bona fide owner of the mortgage given to Walber in 1851, and which was the prior lien on the premises, and she was not chargeable with any fraud or bad faith, either in its inception or assignment, or in the course of the subsequent dealings between Walber, Jones and her husband, which equitably should entitle Jones, or his mortgage, to precedence.

But it was said, at the special term, that Jones was justi-fied in treating with Walber, because, by the record, he was the apparent owner of the mortgage ; and that Walber's agreement operated as a release to Jones of the mortgaged premises to the extent of his mortgage. This position, how-ever, seems to have been abandoned in the argument at bar. The fact that Walber was the recorded owner of the mortgage, gave no binding force to any agreement that Jones might enter into with him in respect to it, or its priority, unless with the knowledge and privity of the real owner. Mrs. Maass was the real owner of the mortgage, and had it in her possession. Her omission to record the assignment was no fraud. It deprived her of no right, except as against a subsequent assignment first duly recorded ; and it conferred no right upon Walber to treat with Jones in relation to the mortgage, nor upon Jones to treat with him, unless he should comply strictly with the recording act ; and then he would be justified by the law, and not by his faith in Walber. Nor did the agreement operate as a release of the mortgaged premises. The whole premises were still held by the Wal-ber mortgage, and continued subject to it. No specific portion was thereby taken out, granted, bargained, sold or released to Jones. All that can be said of the writing is,

that it was a personal contract or covenant, good between the parties, if Walber had the right to make it.

It is now, however, claimed, that if not an assignment of the mortgage itself, it was in effect an assignment to Jones, a subsequent purchaser in good faith, and for a valuable consideration, of an interest in it, and the instrument having been first duly recorded, the effect, under the recording acts, is, as against such subsequent assignee or purchaser to invalidate the assignment to Mrs. Maass. I shall not agitate the question whether the recording acts apply to the assignment of a mortgage. In *Vanderkemp* v. *Shelton*, (11 Paige, 28,) the Chancellor was of the opinion that, since the revised statutes, the provisions of those acts extend to such a case; although, at least, a plausible argument may be made against such a construction. It is enough that I am of the opinion that the revised statutes, relative to the proof and recording of conveyances of real estate, &c., have no application to an instrument like that executed between Walber and Jones; that it was a paper not entitled to record, or if entitled, was not recorded according to law, and hence its record was not notice even to subsequent purchasers, or conferred priority over Mrs. Maass' assignment afterwards duly recorded. Now, what was the writing? In terms and effect it was a mere personal contract between two holders of mortgages, for the postponement of one mortgage to the other. No interest in the mortgage itself, no title or right to the prior bond and mortgage, was tranferred to Jones. The agreement did not by its terms (nor did the parties intend that it should) transfer to Jones the bond secured by the mortgage, nor any interest in it. An assignment of a mortgage without the debt is, under the recording acts, unmeaning. It cannot be pretended that any interest was, or was intended to be, conveyed in the mortgaged premises, or in the security as such. It is in substance a stipulation, as to the law of the case, not as regards any thing entering into or affecting the debt or the security— for both the debt and the lien of the mortgage were to remain,

but in relation to priority simply. By the law, the mortgage earliest in date, and of record, was the first lien, and entitled to be first enforced, but the party supposed to be the mortgagee stipulates, in the particular case, to relinquish his legal right to precedence. That the owner of the mortgage may contract to do this is plain ; and if the contract be in good faith, and founded on a valuable consideration, a court of equity would adjust the rights of the parties accordingly. Such an agreement, however, is not entitled to be recorded ; nor would the record thereof be constructive notice to any body, or invalidate any previous transfer of the postponed security. It is only an instrument in writing by which an estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to real estate may be affected in law or equity, that the provisions of our recording statutes have any application. (1 R. S. 762, § 38.) If the conveyance does not affect any interest in the real estate, or the title thereto in law or equity, no benefit is to be derived from the record. An assignment of a mortgage may, by construction, be brought within the purview or intention of the recording acts ; but an instrument that neither in terms or by legal construction creates, aliens, mortgages or assigns real estate, or by which the title thereto is affected legally or equitably, is not, within any adjudged case, the proper subject of record. What interest in real estate, or in the mortgaged premises, did Walber's agreement create, alien, mortgage or assign ? None whatever. It had no relation to the debt, or the security, or the equity of redemption. It was certainly no grant or release of the equity of redemption, for that was in Maass ; nor by any just construction an assignment of the mortgage or any interest in it.

If the Walber agreement, therefore, was not the subject of record, Jones acquired no rights by recording it. But if it were treated as an instrument within the recording act, nothing would be gained if it were not recorded according to law. It would neither make void Mrs. Maass' assignment,

nor confer priority over such assignment which was subsequently duly recorded. The statute directs that different sets of books shall be provided for the recording of deeds and mortgages; in one of which sets all conveyances absolute in their terms, and not intended as mortgages, or as securities in the nature of mortgages, shall be recorded; and in the other set such mortgages and securities shall be recorded. (1 R. S. 756, § 2.) The paper writing between Walber and Jones, which seems not to have been under seal, was recorded, subsequent to the Jones' mortgage, in the book of deeds. This was not a compliance with the terms or intention of the statute. The paper, if any thing by which a title or interest in real estate was affected, was not an absolute conveyance. An assignment of a mortgage is but a conveyance or transfer of a conditional estate or interest, and of a security for the payment of money; and certainly it can not be claimed that this paper should have a more enlarged operation and effect than if the mortgage itself had been assigned. It was in no sense a conveyance of real estate absolute in its terms. It was the writing of the supposed mortgagee; and if it had a relation to any thing it was to an interest in the security, and not in the real estate covered by it. It should have been recorded in the book of mortgages, if any where, to have made the record effectual as against subsequent bona fide assignees or purchasers from the mortgagee. Recording the paper in the book of deeds in the Kings county clerk's office was not duly recording it, within the meaning of the recording acts, so as to be constructive notice to a subseqent mortgagee in good faith, or to affect a conveyance subsequently but duly recorded. In *N. Y. Life Ins. Co.* v. *White*, (17 N. Y. R. 469,) it was held that a loan office mortgage recorded out of the order due to its date was not recorded according to law, and that such entry did not afford the notice contemplated by the legislature. In *Sawyer* v. *Adams*, (8 Verm. Rep. 172,) a mortgage deed was recorded fraudulently by the town clerk, on the back leaf of a former volume of records in

which no mortgages had been recorded for upwards of twelve years previously. It was held that the mortgage was not duly recorded, and that a subsequent attaching creditor had a priority over the mortgagee; although the statute of that state did not in terms direct the order in which conveyances should be recorded, but simply made it the duty of the clerk "truly to record all deeds and conveyances," &c. Our statute provides for two sets of books of record; one for conveyances absolute in their terms, and not intended as mortgages or as securities in the nature of mortgages; and the other for such mortgages or securities. To record a mortgage, or a conveyance intended as a mortgage, or a security in the nature of a mortgage, in the book of conveyances absolute in their terms, would not be a lawful record. Such conveyance would not be, in the words of the statute, "duly recorded," so as to be constructive notice to a subsequent assignee or purchaser in good faith and for a valuable consideration from the mortgagee.

I think, therefore, that the assignee and holder of the mortgage of November, 1851, is entitled to the surplus moneys. Such mortgage being prior in date and in record to that given to the appellant Jones, still retains its original priority in the hands of Schmidt. Mrs. Maass' rights, and those of her assignee, were not affected by the attempted record of the agreement between Walber and Jones; nor is there any thing in the circumstances of the case, as between Mrs. Maass, the assignee and holder of the senior mortgage, and Jones, the junior mortgagee, to equitably entitle the mortgage of the latter to priority.

This view disposes of the case, and obviates the necessity of inquiring whether, if the Walber agreement is to be regarded as giving priority to the Jones mortgage, that priority was not extinguished and gone by the payment, in fact, to Jones of the amount of his mortgage after its maturity. This was the ground taken by the referee, and it seems not to be without force. Priority of lien of the Jones mortgage, if obtained

at all, was by virtue of the Walber agreement. Walber stipulates, with the view of enabling Maass to take up more money and to increase his credit upon the security of the mortgaged premises, that any mortgage Maass may execute to Jones, for an amount less than $3000, shall take precedence of his own. By virtue of this agreement, a mortgage to secure a present indebtedness of Maass would be entitled to no priority. It was only a mortgage to secure future advances that Walber stipulated should come before his mortgage; and Maass and Jones were to fix the amount of future credit, not to exceed three thousand dollars. A bond and mortgage were executed for $1500, payable on the 30th of September, 1862, thus fixing the amount and time of credit. Jones continued his dealing with Maass, furnishing him malt and hops, and Maass making large payments on account, up to the death of the latter in November, 1853. Of the advances made by Jones from the date of the mortgage to Maass' death only about the sum of $465 were unpaid, and after the 30th of September, 1852, (the time the mortgage matured,) Jones received from Maass on account some $6300, a sum more than sufficient to satisfy the mortgage and Maass' old debt. Walber, by his agreement, had surrendered his right of priority only "for the purpose of enabling Maass to take up more money and to increase his credit." His lien continued, and attached itself as against Jones' mortgage, the moment the object of the agreement was accomplished. When Jones had made advances to the amount of $1500, and Maass had credit to that amount, and these advances were paid by Maass, the object of the agreement was fully accomplished. Walber, even as a junior mortgagee or incumbrancer, had the right before or after the maturity of the Jones mortgage to have paid to Jones the amount of the advances, ($1500,) and to have had the mortgage satisfied or assigned to him, or to be subrogated to the rights of Jones under it. It can hardly be claimed that Jones had any right, as against Walber or his assigns, to

continue and enlarge a credit with Maass indefinitely.   If he would do so, he has no right to ask that the lien of the Walber mortgage should be postponed until it should suit his convenience or interest to close his account with Maass.

The order of the Supreme Court should be affirmed.

MARVIN, J. did not sit, in the case.

All the other Judges concurring, except that ROSEKRANS, J. thought that Walber's stipulation affected real estate and might be recorded,

Order affirmed.