## SHAW *v.* ABBOTT.

A statutory petition to redeem land from a mortgage is an action of a nature sufficiently equitable to bring the plaintiff within the rule that he who seeks equity must do equity.

The holder of a first mortgage, who is induced to take a third mortgage of the same property by the written, unsealed agreement of the holder of the second that the third shall take precedence of the second, may have specific performance of the agreement enforced in an equitable action brought against him by the holder of the second for redemption of the land from the first.

PETITION, to redeem land from a mortgage. Reported 60 N. H. 564. Facts found by the court. The defendant holds a third mortgage, given in 1871, and a fifth mortgage, given January 25, 1873, and the plaintiff holds a fourth mortgage, given in 1872, of the same land. The plaintiff, as holder of the fourth, seeks to redeem the land from the third. Three days before the fifth mortgage was made, the plaintiff signed the following writing : " Whereas, I now hold a mortgage on the homestead premises of my father, David Shaw, situated on South street, in Concord, N. H., which mortgage is the fourth on said premises, and whereas my father desires to obtain of Moses B. Abbott, of said Concord, an additional loan of three hundred dollars, now in consideration that said Moses B. Abbott has agreed to loan said sum to my said father, and take a fifth mortgage on his said homestead, I do hereby waive the precedence of my said mortgage to the mortgage given to said Abbott, and I do hereby consent that his mortgage shall take the precedence of mine, and be considered and collected as the fourth mortgage and claim, and I do hereby agree with said Abbott that I will not hinder or do any act which may delay the collection of said Abbott's claim as the fourth on said real estate. Witness my hand and seal the 22d day of January, 1873. Lauren A. Shaw."

By this written agreement, not under seal, the plaintiff induced Abbott to loan the plaintiff's father $300, and to take the fifth mortgage as security.

*A. F. L. Norris*, for the plaintiff. By the writing, Shaw undertook to give Abbott's second mortgage, the fifth upon the estate, precedence to his own, which was the fourth. The writing does not undertake to substitute the note of Abbott, and thereby, as incident to it, the mortgage also ; it does not in terms undertake to substitute the note and mortgage of Abbott in the place of Shaw's note and mortgage ; but it undertakes to substitute the mortgage of Abbott, simply, in the place of that of Shaw, and thereby give it precedence. It is said that a parol assignment of the debt carries the mortgage with it (*Runyan* v. *Mersereau*, 11

Johns. 536, *Southerin* v. *Mendum*, 5 N. H. 420, *Lane* v. *Sleeper*, 18 N. H. 209, *Whittemore* v. *Gibbs*, 24 N. H. 484), and that an assignment of the mortgage without assigning the debt passes nothing. *Jackson* v. *Bronson*, 19 Johns. 326; *Wilson* v. *Troup*, 2 Cowen 231; 4 Kent Com. 186; *Whittemore* v. *Gibbs*, 24 N. H. 488. To give effect to this writing, it must be assumed that the mortgages are conveyances of real estate, and not merely incident to the debts which they were made to secure. If the agreement of substitution by Shaw with Abbott was an attempted assignment merely, and an attempted assignment of the mortgage only, it could not operate to transfer or substitute Abbott's mortgage in the place of that of Shaw. But assuming that the mortgages may be treated as conveyances of real estate, the attempted assignment or substitution by the parties is to be considered and treated as if they were seized in fee. It is said, in *Southerin* v. *Mendum*, 5 N. H. 429, that "It is settled that a mortgage in fee passes to the mortgagee, as between him and the mortgagor, all the estate in the land; and where there is no agreement to the contrary between the mortgagor and the mortgagee, the latter is entitled to enter and hold the land until redeemed, and may maintain trespass or a writ of entry against any person who may disturb his possession, even against the mortgagor himself. *Newell* v. *Wright*, 3 Mass. 138; *Brown* v. *Cram*, 1 N. H. 169; *Pettengill* v. *Evans*, 5 N. H. 54; *Dexter* v. *Harris*, 2 Mason 531; *Estabrook* v. *Moulton*, 9 Mass. 258; *Green* v. *Kemp*, 13 Mass. 515; *Thunder* v. *Belcher*, 3 East 449. The law gives to the mortgage these effects to enable the mortgagee to prevent waste, and keep the land from being lessened in value in any way, and also to enable him to receive the rents and profits to which he is entitled. But notwithstanding the mortgagee, so far as it is necessary to accomplish these purposes, is considered and treated in law as seized in fee and the owner of the land, still his interest is, in other respects, considered in a different point of view. In order to give him the full benefit of the security, and appropriate remedies for any violation of his rights, he is treated as the owner of the land."

"No conveyance in writing of any lands shall be defeated nor any estate incumbered by any agreement, unless it is inserted in the condition of the conveyance and made part thereof, stating the sum of money to be secured or other thing to be performed" G. L., c. 136, s. 2. Shaw's mortgage was a conveyance, in writing, of lands; and the writing given by Shaw to Abbott was an agreement, which, if valid, defeated his conveyance and encumbered his estate therein. It postponed his mortgage to that of Abbott, it diminished his security, and, in this instance, entirely deprived him of security. If it be held operative for this purpose, it would be in manifest contravention of this provision of the statute. *Kingsley* v. *Holbrook*, 45 N. H. 313. In that case, where a construction was given to this statute, there was a deed by Samuel Holbrook & Son

to one Conant of all the pine timber on a piece of land belonging to Holbrook & Son. At the same time Conant signed and delivered to the Holbrooks a writing, not under seal, that he would cut and remove all the timber from the land within three years from its date, and in failure so to do he agreed to forfeit all the timber left upon the land. The court, in referring to this provision of the statute, say that it applies to both deeds and mortgages, and that "The written agreement, or defeasance, should not have been admitted, and of course the other evidence in regard to the extension of the time of getting off the timber was immaterial. The result is that the deed conveyed the timber absolutely, and this accompanying paper was a contract upon which Conant might have been liable to the Holbrooks if he did not perform its conditions, and that agreement might be modified by parol. . . . This writing was also improperly admitted upon another ground. Since we hold that the property conveyed was an interest in land which can only be conveyed by an instrument under seal, this writing, in order to have operated as a defeasance, must have been also under seal, which is not the fact; so that, independent of our statutes, the writing was not admissible." The inadmissibility of the writing was put upon two grounds, and both are applicable to the case at bar. The latter ground is a well recognized rule of law. *Jackson* v. *Wendell*, 12 Johns. 355; *Jackson* v. *Wood*, 12 Johns. 73; 2 Bl. Com. 297, 312; *Lund* v. *Lund*, 1 N. H. 41; *French* v. *Sturdivant*, 8 Greenl. 246; *Bickford* v. *Daniels*, 2 N. H. 71; *Runlet* v. *Otis*, 2 N. H. 167; *Wendell* v. *Bank*, 9 N. H. 404. In *Jackson* v. *Wendell*, which was a writ of entry to recover certain lands, the conveyance under which the plaintiff claimed to maintain his action was in the common form, except that no seal was affixed. It recited, as in this case, that the grantor hereunto set his hand and seal. It was held that for want of a seal the instrument did not transfer any title to the plaintiff, and judgment was ordered for the defendant.

Shaw is not estopped to say that the writing is an invalid agreement because it is not under seal. If it were a sealed instrument, it might be otherwise. There might be an estoppel in that case by deed. Shaw had done nothing to estop him from asserting the truth. Here was no concealment of an outstanding title, and Shaw had done no act and had made no admission which he now seeks to deny. Both parties are presumed to have known the law, and that the writing signed by Shaw was invalid for the want of a seal. Shaw said to Abbott, by an invalid agreement which both understood, and in regard to which there was no fraud or deception, "Let my father have $300, and take a fifth mortgage on his house, and your mortgage shall be the fourth, and my mortgage, which I now hold, shall be the fifth on the property." Abbott knew that Shaw then held his mortgage, and that it was the fourth on the property. Shaw now says, in answer to the writing, "True, I

made the writing just as you knew it was made at the time; I did not seal it, and this you knew also." Shaw does not, by this defence, deny any act or admission ever made by him. He only says that the writing, which he supposed good at the time, turns out to be invalid for the want of a seal, and that the law presumes that both parties understood it.    *Parker* v. *Barker*, 2 Met. 431; *Hurd* v. *Silsby*, 10 N. H. 108; *Kingsley* v. *Holbrook*, 45 N. H. 321; *Lund* v. *Lund*, 1 N. H. 41; *Runlet* v. *Otis*, *supra*; *Bullen* v. *Runnels*, 2 N. H. 260; *Wendell* v. *Bank*, 9 N. H. 404; *Jackson* v. *Wendell*, 12 Johns. 355; *Jackson* v. *Wood*, 12 Johns. 73. In *Parker* v. *Barker*, which was a writ of entry upon a mortgage to recover two lots of land in South Boston, it is said,—"The further inquiry is, whether the demandant has, by any acts or declarations of his, waived his priority as mortgagee, and postponed his mortgage to take effect subsequently to that to the Lafayette Bank. The only question here presented is concerning the effect to be given to the evidence as to what passed at the interview between the demandant and the president of the Lafayette Bank, before the acceptance of the mortgage from Gaylord to that bank, on which occasion the demandant said to the president of the bank, who was acting as its agent in the matter, that if the bank would take the mortgage of Gaylord as proposed, he would relinquish his claims on the demanded premises. This declaration of the demandant, it is said, must operate to estop him from setting up his mortgage against the tenant, either, *first*, as an admission acted upon by the Lafayette Bank, and therefore conclusive against the demandant; or, *secondly*, upon the doctrine that if a party having title stands by, encouraging and promoting a sale to a third person, he waives his prior title; or, *thirdly*, that it was a parol discharge of the debt secured by the mortgage. . . . The case before us has not the material element necessary to give effect and application to the principle contended for, there being no evidence of any concealment of an outstanding title. The party here was not misled by any such concealment, but has been damnified solely by the breach of the promise of the demandant that he would relinquish his title. But it was a parol promise to relinquish title to real estate, and was therefore inoperative and void by the statute of frauds." See *Davis* v. *Sanders*, 11 N. H. 259; *Gurnsey* v. *Edwards*, 26 N. H. 224; *Heath* v. *Bank*, 44 N. H. 174; *Davis* v. *Handy*, 37 N. H. 65; *Simons* v. *Steele*, 36 N. H. 73; *Odlin* v. *Gove*, 41 N. H. 465; *Drew* v. *Kimball*, 43 N. H. 285; *Corbett* v. *Norcross*, 35 N. H. 99.

In *Kingsley* v. *Holbrook*, *supra*, where Conant, at the time of the conveyance of pine timber, by deed, gave back a transfer, not under seal, to Holbrook, of all the timber not removed within three years, it was held, in a suit against Holbrook for cutting and carrying away the timber after the expiration of the three years, that Conant, and the party claiming under him, were not estopped to

say that the agreement of Conant was invalid for the want of a seal. In *Lund* v. *Lund*, 1 N. H. 41, the law of which is approved in *Kingsley* v. *Holbrook*, the court say,—"At common law a mortgage is defined to be a deed conveying lands conditioned to be void upon the payment of a sum of money, or the doing of some other act. This condition may be included in the deed of conveyance, or it may be by a separate deed, executed or at least taking effect at the same time so as to be part of the same transaction. It must be by deed, and cannot be by parol or instrument in writing not under seal. It must take effect at the time the deed of conveyance takes effect, and not at a subsequent time. A deed, or even any instrument in writing, made at a subsequent time, may be a valid contract, but it cannot operate as a defeasance, cannot affect or qualify the title vested by the prior conveyance. Such subsequent contract would be altogether personal in its nature, and inoperative otherwise than as the foundation of an action to recover damages for the breach of its provisions." The doctrine of this case seems to be, that even if the writing given by Shaw to Abbott had been sealed, having been made at a subsequent time to the date of Lauren A. Shaw's mortgage, it cannot operate to affect or qualify, by estoppel or otherwise, the title vested by the prior conveyance. In *Jackson* v. *Wendell*, *supra*, where Wadsworth had paid the full consideration and had taken a conveyance of real estate, not under seal, and had brought a writ of entry to recover possession, it was held that he could not maintain the action because the conveyance was invalid for want of a seal, and that the grantor was not estopped to set up such invalidity of the conveyance in defence of the action. "No estate conveyed in mortgage shall be holden by the mortgagee for the payment of any sum of money or the performance of any other thing, the obligation or liability to the payment or performance of which arises, is made, or contracted, after the execution and delivery of such mortgage." G. L., c. 136, s. 3. If the writing is valid, so as to give precedence to the second mortgage of Abbott over that of L. A. Shaw, the estate conveyed by David Shaw to his son L. A. Shaw, in mortgage, may be held by L. A. Shaw as mortgagee for the payment of the money due upon Abbott's second mortgage, upon its redemption and payment by L. A. Shaw, the obligation to the payment of which was contracted after the execution and delivery of L. A. Shaw's mortgage. Such agreement on the part of L. A. Shaw and Abbott would be in contravention of this law, and the court would not lend its aid in maintaining its validity, but leave the parties to their remedies as if it had never existed, to wit, to a redemption of Abbott's first mortgage alone,—as L. A. Shaw may redeem Abbott's first mortgage without asking the court's assistance to give validity to a contract manifestly contemplating a violation of this provision of the law. If Abbott has a

remedy, it is an action for damages for alleged breach of contract.

*J. H. Albin*, for the defendant. The plaintiff having held out the inducement contained in the agreement, Abbott was warranted in relying upon it, and changing his position by parting with his money. The plaintiff is estopped from denying his agreement. *Davis* v. *Sanders*, 11 N. H. 261; *Davis* v. *Handy*, 37 N. H. 75; Story Eq., ss. 1542, 1546, 1550. In *Fay* v. *Valentine*, 12 Pick. 40, 44, the plaintiff, holding a second mortgage, verbally encouraged the defendant to purchase the first, assuring him that he would never redeem it; and the defendant, relying upon such promise, was induced to purchase the first, and then made improvements upon the property. The plaintiff afterwards attempted to repudiate his verbal agreement by instituting proceedings to redeem. The court said,—"Considering then these assurances as satisfactorily proved, we are of opinion that the plaintiff is bound by them in this suit. It is objected that the interest of a mortgagee can neither be transferred nor relinquished by parol. Most certainly it cannot; but no party, whatever may be his interests or legal rights, can have relief in a court of equity unless his claim is founded on the basis of good faith and justice. It is a familiar rule, that he who seeks equity must do equity. He must not expect the aid of a court of equity to sanction the violation of his engagements, although there may be no legal means to enforce them."

The writing is a valid release, and by it his mortgage of 1872 is made subject to the mortgage of 1873. No precise formality of making a release is required. 2 Jones Mort., ss. 972, 974; *Proctor* v. *Thrall*, 22 Vt. 262; *Headley* v. *Goundry*, 41 Barb. 279; *Ackla* v. *Ackla*, 6 Penn. St. 228; *Griswold* v. *Griswold*, 7 Lans. 72. The agreement would have been sufficient if it had not been in writing. "The parties may, as between themselves, make a valid agreement, though it be verbal only, that one of two mortgages shall be prior to the other, and the order of record is then immaterial, unless they are subsequently assigned to other persons who have no notice of the agreement." Jones Mort., s. 608.

Doe, C. J. The statutory petition to redeem is an action of a nature sufficiently equitable to bring the plaintiff within the rule that he who seeks equity must do equity (*Proctor* v. *Green*, 59 N. H. 350, 352); and this rule does not allow him to avoid the agreed priority of the last mortgage. Story Eq., s. 64 e. His agreement can be enforced in an action brought by the defendant for specific performance; and there is no occasion to put the parties to the expense of another suit. *Gillig* v. *Maass*, 28 N. Y. 191, 213, 214. The plaintiff's judgment for redemption will contain a

condition that the plaintiff pay the fifth mortgage as well as the third, or file with the clerk, for the defendant's use, a sealed instrument that will give the fifth indisputable precedence; or the judgment will be drawn in some other form that will give the defendant the specific relief to which he is entitled.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.