[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 180 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 181 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 182 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 183 
I concur in that part of the opinion delivered in the supreme court, which declares that the defendant had no right, as against the complainants, to relinquish her title to the two notes of Ingalls and Beardsley for $500 each, and that the amount of those notes ought to be considered as applied towards the satisfaction of the judgment against Cross. But if these notes were credited, in addition to all the other payments, there would still be a balance due upon the judgment, upon which the complainants' lots might be sold if there were nothing else in the case. I am not aware of any principle which will compel a judgment creditor to relinquish his lien upon an item of real estate of the debtor, because he has sold it and paid the creditor the purchase money on account of the judgment debt, even with knowledge, on his part, of the source from which the money was obtained. In the absence of an agreement to discharge the land conveyed in consideration of the payment, I suppose the lien would remain both in equity and at law. The transfer of the notes can scarcely be more effectual than the payment of the whole purchase price in money would have been. The defendant was bound to receive them under her agreement, as she or any other judgment creditor would have been obliged to receive the money if offered; but such *Page 184 
payment would not of itself operate as a discharge of the lien of the judgment as to any property to which it attached.
It is therefore necessary to consider whether any of the other facts alleged and proved entitle the complainants to the decree which has been rendered. I am of opinion that after the defendant was aware that Cross had sold and conveyed the lots for a valuable consideration, and that the purchase money had been paid, she could not, without violating the equitable rights of the purchasers, return to Cross any security which he had furnished to her for the payment of her debt. The giving of negotiable notes, and the transfer of them to the defendant, was, as between the parties to this suit, equivalent to actual payment for the land; and the notes having been in fact paid before the present controversy arose, the case is precisely the same as though the purchasers had paid cash for the lots at the time of the purchase.
It is a material inquiry whether the defendant had actual or constructive notice of the sale of the lots before the securities were given up to Cross. There is no evidence that she had personally any knowledge on the subject; but her agent was perfectly aware of the whole transaction, and he acquired that knowledge in the course of his employment for her. When he received the notes for $1800, made by Ingalls and Beardsley, which were delivered to him as her agent, he knew that they were given for the purchase price of the two lots of land which they had bought of Cross; and he knew, moreover, that these lots were subject to the lien of the defendant's judgment, and that the purchase was made and the notes were given in the confidence on the part of the purchasers that Cross had an unincumbered title. This notice is legally imputable to the defendant. Where an agent comes to the knowledge of a fact while he is concerned for the principal, this operates as constructive notice to the principal himself; for, upon general principles of policy, it must be taken for granted that the principal knows whatever *Page 185 
the agent knows. (Story on Agency, § 140; Fitzherbert v.Mather, 1 Term R., 12; Jeffrey v. Bigelow, 13 Wend.,
518; The Bank of the U.S. v. Davis, 2 Hill, 461; FultonBank v. The N.Y. and Sharon Canal Co., 4 Paige, 137;Norris v. Le Neve, 3 Atk., 26; Brotherton v. Hatt, 2Vern., 574; Jennings v. Moore, id., 609; Downes v.Power, 2 Ball B., 491; Paley on Agency, Law Lib. Ed.,
262, 263, and note 1.)
The defendant therefore must be considered to have known of the circumstances attending the conveyance to Ingalls and Beardsley about the time it took place. She then had in her hands a considerable amount of collateral securities, which had been transferred to her by Cross, and she continued to receive other similar securities in that and the two following years. A part of the first parcel of notes and bonds had been given up to Cross before he had conveyed the lots. As to these the complainants have no right to complain, for, as between the parties to the judgment, the lien would not be affected by the transfer and giving back of securities. They would not operate as payment until money was actually received upon them. But she continued, after the conveyance by Cross, and with legal notice of that conveyance and of the rights of the purchasers under it, to retransfer to him the securities which he had turned out to her to secure the payment of the judgment. I collect from the schedules annexed to the answer, that notes, and bonds and mortgages were thus given up to Cross, after his conveyance and after notice thereof to the defendant, to the amount of $5486.67, without reckoning interest which had accrued on the demands. If these had been collected by the defendant, instead of being returned to Cross, they would, with the admitted payments, have largely overpaid the judgment, and nothing would have been due when the defendant attempted to sell the complainants' lots on execution. The question therefore arises, whether this could be done and the lien still retained upon those lots, without a violation of the complainants' equitable rights. We are of *Page 186 
opinion that it could not. The facts present a case where the creditor has a lien upon two funds for the security of his debt, and another party has an interest in one only of these funds, without any right to resort to the other. In such a case, equity will compel the creditor to take his satisfaction out of the fund upon which he alone has an interest, so that both parties may, if possible, escape without injury. (Wright v. Nutt, 1 H.Bl.,
136; Cheesebrough v. Millard, 1 John. Ch. R., 409;Stevens v. Cooper, id., 425; Hayes v. Ward, 4 id., 123;Evertson v. Booth, 19 John., 486; The York and JerseySteamboat Ferry Co. v. The Associates of the Jersey Co.,Hopk., 460; James v. Hubbard, 1 Paige, 235.) The rule in equity requiring parcels of land incumbered by a judgment or mortgage to be subjected in the inverse order of their alienation by the debtor, is a branch of this rule. (Clowes v.Dickenson, 5 John Ch. R., 235; Gouverneur v. Lynch, 2Paige, 300; Stuyvesant v. Hall, 2 Barb. Ch. R., 151.) When one parcel is aliened by the debtor the lien attaches primarily to that which remains in his hands, and so on as each parcel is sold; and if anything remains in the hands of the debtor when the lien comes to be enforced, that is to be first subjected to it. The rule applies equally to any other species of property. Hence it is perfectly clear that if the defendant had sought to sell the complainants' lots on her execution, at the time when she had these moneyed securities in her hands, a court of equity would have restrained her until she had exhausted her remedy upon them, or had assigned them with the judgment to the complainants on their paying the amount. Several examples of the application of this rule will be found in the cases already referred to. But in this case the defendant, before she attempted to sell the lots, had voluntarily disabled herself from resorting to the securities which Cross had transferred to her, by giving them up to him; and she had done this with a knowledge of the situation of the complainants, and when she could not but have seen that the consequence of her act *Page 187 
would be to cast the lien of her judgment upon the land which the complainants had in good faith purchased and paid for. The result, we think, is, that she has deprived herself of the right to resort to the complainants' lots. It is analogous to the familiar case where a creditor relinquishes to a principal debtor other direct or collateral securities or remedies which he might have resorted to for the exoneration of the surety. If he does this he deprives himself of the right to resort to him. It subverts the right of subrogation to which the surety would have been entitled upon the payment of the principal debt. Although the complainants do not stand in the precise light of sureties, their condition has many points of similarity; and I do not doubt but that, if they had been compelled to pay this judgment to preserve their estate in these lots, the defendant still retaining the securities which Cross had devoted to the payment of that debt, and no one else having obtained a lien thereon, they would have been entitled to them by way of subrogation. The rule on this subject appears to have been well understood in the civil law. POTHIER says that "when a creditor has by his own act incapacitated himself from ceding to the surety his actions, either against the principal debtor or against the other sureties, whether because he has discharged them or because he has by his neglect allowed his demand against them to be dismissed, the surety may obtain a declaration that the demand of the creditor is inadmissible for so much as the surety might have procured by the cession of actions which the creditor has disabled himself from making." (Treat. on Obl., 280.) InCheesebrough v. Millard, before referred to, Chancellor KENT admitted the rule as stated in POTHIER to be well settled, and to be applicable to a case like the present, where a party had a subordinate lien upon one of the funds, which was subject to the prior lien of another party; but he was of opinion that it was essential that the party having a claim upon both funds should have been aware of the situation of the other party when he did *Page 188 
the act complained of. "As this rule of substitution," he says, "rests on the basis of mere equity and benevolence, the creditor who has thus disabled himself from making it is not to be injured thereby, provided he acted without knowledge of the other's rights, and with good faith and just intention, which is all that equity in such cases requires." (1 John. Ch. R., 414.) It is scarcely necessary to mention that a surety, or a party standing in the position of a surety, has the same right of substitution as to collateral securities furnished by the debtor, as in respect to the demand against the debtor himself. (King v.Baldwin, 2 John. Ch. R., 554; Hayes v. Ward, 4 id.,
123.) In Stevens v. Cooper (supra) a mortgage had been given upon six lots of land. The mortgagor sold one of them to the complainant, subject to the payment of a proportionate part of the mortgage debt, and afterwards the owner of the mortgage released the remaining lots on receiving other security for their proportion of the mortgage debt, which security turned out to be unavailable. He then filed his bill to foreclose the mortgage against the lot sold to the complainant, for the whole amount of the debt. The court held that the complainant's lot was discharged from that portion of the debt which was equitably chargeable upon the lots released. The same principle was repeated in Hayes v. Ward, already referred to. In James v.Hubbard, before cited, a judgment creditor had released a lot of land, on which the judgment was a lien, to one who had purchased it of the debtor, and then attempted to sell another parcel which the judgment debtor had aliened at a later period. The court compelled the creditor to deduct from his judgment an amount equal to the value of the lot released. In Depeyster v.Hildreth (2 Barb. Ch. R., 109) a judgment creditor had taken the debtor's goods on execution, and in that condition of things another person lent the debtor money on a mortgage of his lands. Afterwards, the judgment creditor, knowing of the existence of the mortgage, withdrew his execution, and the personal property was sold on other executions. *Page 189 
Chancellor WALWORTH was of opinion that he had by that act forfeited his priority against the land.
The doctrine is founded on the most obvious principles of equity, and the present case is a suitable one for its application. As soon as the defendant's agent became aware that the complainants had advanced their money, or given their negotiable paper, for a portion of the land bound by the judgment, it was his duty and the duty of his principal so to manage the securities in his hands, and those which the debtor afterwards furnished, as to save the complainants from loss if it could be done without hazarding his collection of the judgment. Instead of doing so, she suffered the debtor to take and convert these securities, which were amply sufficient to have paid the judgment, to his own use. After this it would be eminently inequitable and unjust to allow her to sell the complainants' land. I think, also, that the proper disposition was made of the costs.
The decree of the supreme court should be affirmed, but without costs in this court.
All the judges concurred.
Judgment accordingly.