# N. Y. SUPERIOR COURT.

THE BANK FOR SAVINGS IN THE CITY OF NEW YORK agt. MARTIN FRANK and others.

MARTIN FRANK agt. THE BANK FOR SAVINGS and others.

*Mortgages — agreement by first mortgagor to waive priority of — Latent equities — Recording acts — Purchaser in good faith.*

On October 13, 1869, the bank agreed to loan one E. $7,000. There then existed on the property a first mortgage for $7,200, on which $5,700 of the principal was due, made by B. to H., dated November 16, 1864, and duly recorded; also a mortgage made by D. and R. to W., dated March 31, 1868, and recorded, to secure the payment of $6,700 installments. On closing title the bank paid $5,827.62 to pay amount due on first mortgage. W., the admitted owner of the second mortgage, executed an agreement postponing it to the mortgage to the bank, which agreement was recorded November 22, 1869, in liber of conveyances. Upon the faith of this agreement the bank's mortgage was taken and duly recorded November 22, 1869. Nothing further was heard of the matter until W. demanded from D. and R., the makers of his mortgage, made subsequent to that of the bank, payment of the same, and threatened foreclosure when D. and R. agreed to buy for the purpose of foreclosing it themselves. They were advised to take the assignment in the name of a third party and induced F., who is a step-brother of R., to purchase it for a consideration of $1,000, to be paid by two notes. D. and R. knew of W.'s agreement with the bank, though they had never consented to or ratified it, and they assured F. that the mortgage was all right and a first mortgage. Before F. accepted the assignment and gave his notes he retained Wagner, who had been, and then was, the attorney for D. and R., to search the title for him, and in such search he found the agreement on record as above stated. At about 12 o'clock at noon, on April 23, 1878, at which time the relation of attorney and client existed between F. and Wagner, the latter had an interview with the attorney for the bank, during which the agreement between

Bank for Savings agt. Frank.

W. and the bank and certain errors in the recording thereof were discussed. F. took the assignment and parted with the consideration therefor, subsequent to said interview, and put it on record at 3.45 P. M., on that day:

*Held*, 1. That the agreement between the bank and W., the assignor of F., that W. should waive the priority of his mortgage in favor of a mortgage to be given by E. to the bank, is one not entitled to be recorded under the statute, and, hence, the record thereof is not constructive notice to anybody.

2. That even if it had been thus entitled it should have been recorded in the book of mortgages and not in the book of conveyances in order to make the record effectual, as against subsequent *bona fide* assignees or purchasers, from the mortgagee.

3. That in no aspect of the case can the bank derive any benefit from the mere recording of said written instrument against F., as subsequent assignee of W., whose assignment was duly recorded, provided F. was a purchaser in good faith and for a valuable consideration.

4. That an assignee of a mortgage must take it subject to the equities attending the original transaction, and the true test is to inquire what the mortgagee can do by way of enforcement of it against the property mortgaged. What he can do the assignee can do and no more.

5. That where a mortgage had a valid inception as a subsisting and enforceable lien in the hands of the mortgagee to the full extent of its face, equities arising thereafter stand upon a different footing and are to be disposed of upon such other principles of public policy, or, according to such statutory requirements, as the facts of the particular case may call for.

6. That the courts have always been discriminating and careful in cases of conflicting equities arising after the inception and during the life of a mortgage to cast the loss, if any, upon the party at fault. But the protection of the statute extends only to purchasers in good faith and for a valuable consideration. Good faith is not enough without a valuable consideration parted with on the faith of the conveyance; nor is the parting with such valuable consideration sufficient, in the absence of good faith, which cannot be said to exist in case of notice.

7. That though F. may have been personally ignorant of the true state of affairs, the knowledge which his attorney had before the final close of the transaction was, in law, equivalent to notice to him; and he having purchased with notice of the rights of the bank, he cannot be held to have been a purchaser in good faith, though he may have parted with a valuable consideration.

8. That the bank is entitled to a finding setting forth this fact; to an adjudication that it has a lien upon the mortgaged premises for the whole amount of E.'s mortgage, superior to the lien of F., by virtue of

his said mortgage and to the usual decree of foreclosure to carry this adjudication into effect.

9. That R. and D., as original mortgagors by the agreement between W. and the bank, it having been made without their knowledge or consent and remaining unsatisfied by them, are discharged from all personal liabilities in the premises.

*Special Term, December,* 1878.

*Chas. E. Strong* and *John L. Cadwalder,* for plaintiff.

*Arnold H. Wagner,* for defendant.

FREEDMAN, *J.*—These two actions which were tried together, were commenced to foreclose mortgages on the same property, and the question between the Bank for Savings and Martin Frank, as the holders of the mortgages, is which of the said mortgages shall have priority.

There can be no doubt that the real agreement between the bank and Wolff, the assignor of Frank, was that Wolff should waive the priority of his mortgage upon the premises in question in favor of a mortgage to be given by Eppensteiner to the bank upon the same premises to secure the payment of the sum of $7,000.

To carry such agreement into effect, Wolff, on November 15, 1869, for a valuable consideration, executed under his hand and seal, and delived to the bank, an instrument in writing purporting to contain such waiver, which was recorded November 22, 1869, in Liber 1113 of Conveyances, page 625.

Upon the faith of said agreement and instrument, the bank advanced to Eppensteiner the said sum of $7,000, and out of that amount the sum of $5,827.62 was used in paying off and discharging a mortgage upon the same premises held by Philip C. Harmon and others, which was prior in point of date and record to Wolff's mortgage.

As the real agreement, for the purposes of these actions, must be deemed to have become merged in the written one, it is important to consider what rights the bank acquired under

and by virtue of this written instrument, and the recording thereof, as against a subsequent assignee of Wolff's mortgage, whose assignment was duly recorded.

In terms and effect it was a mere personal contract between two holders of mortgages, for the postponement of one mortgage to the other. No interest in the mortgaged premises, nor any right, title or interest in or to the prior bond and mortgage, was transferred thereby. It did not operate as a release, for the whole premises continued subject to Wolff's mortgage.

It was, in substance, a stipulation as to the law of the case, not as regards any thing entering into or affecting the debt or the security, for both the debt and the lien of the mortgage were to remain, but in relation to priority simply.

Such an agreement was held to be one that is not entitled to be recorded under the statute, and hence, the record thereof is not constructive notice to anybody (*Gillig* agt. *Maass*, 28 *N. Y.*, 191).

But if it had been thus entitled, it should have been recorded in the book of mortgages, and not in the book of conveyances, in order to make the record effectual as against subsequent *bona fide* assignees or purchasers from the mortgagee, for the statute (1 *R. S.*, 756, *sec.* 2) directs that different sets of books shall be provided for the recording of deeds and mortgages, in one of which sets all conveyances absolute in their terms, and not intended as mortgages, or as securities in the nature of mortgages, shall be recorded; and in the other set such mortgages and securities shall be recorded.

Moreover, the mortgage, whose priority Wolff had agreed to waive, was a mortgage recorded on the 1st day of April, 1868, in Liber 852 of Mortgages, page 258; but this mortgage he described in the written instrument as a mortgage recorded on the 16th day of April, 1868, in Liber 1049 of Mortgages, page 261.

In no aspect of the case, therefore, can the bank derive any benefit from the mere recording of the said written instru-

ment as against Martin Frank, as subsequent assignee of Wolff, whose assignment was duly recorded, provided Frank was a purchaser in good faith, and for a valuable consideration.

It is insisted, however, that Martin Frank could only buy what Wolff had to sell, and that he stands in the latter's shoes.

The general rule undoubtedly is, that a seller or assignor of chattels or choses in action can give no other or better title than he himself has, and that the purchaser or assignee must be content to stand in his place and to accept his title ; and that consequently one who takes an assignment of a bond and mortgage, as *Mrs. Burchard did* in *Schafer* agt. *Reilly* (50 *N. Y.*, 61), takes it subject not only to any latent equities that exist in favor of the mortgagor, but also subject to the like equities in favor of third persons and strangers.

In the case last referred to, whatever vitality the mortgage had, was by reason of the purchase of it by, and the assignment to, Mrs. Burchard. It took effect only as a mortgage by its delivery to her, and, hence, it was held that she took it subject to Griffin's mechanic's lien, which had been perfected pursuant to the statute prior to that time.

In the *Trustees of Union College* agt. *Wheeler* (61 *N. Y.*, 88), which was a case of inherent equity as between a purchaser, having under a certain contract, an interest in the equity of redemption, and the mortgage, it was held upon such inherent equity, that the mortgage never was any other than a lien subordinate to the rights of the purchaser, and that for this reason the plaintiff, as assignee of the mortgage, acquired no other or greater rights. The true test, said Dwight, C. is to inquire what the mortgagee can do by way of enforcement of it against the property mortgaged. What he can do, the assignee can do, and no more.

In *Greene* agt. *Warnick* (64 *N. Y.*, 220) it was held that where two mortgages are executed at the same time, and upon an agreement that they shall be and remain equal liens in all respects upon the premises, an assignee of either of them takes it subject to all the equities arising out of the agree-

ment in favor of the holder of the other, and that in such a case prior record is of no avail, because neither mortgage is a *subsequent* conveyance within the meaning of the recording act. In reaching this conclusion and commenting upon the authorities, the test laid down by DWIGHT, C., in the case of *The Trustees of Union College* agt. *Wheeler* (*supra*), is specifically referred to.

In *Crane* agt. *Turner* (67 *N. Y.*, 437) Pierce had executed a mortgage upon premises of which he had possession under a contract of sale, and, after receipt of a deed, he conveyed the premises and received from the grantee who had notice of the prior mortgage, a mortgage for a part of the purchase-money. Pierce then assigned his mortgage to the defendant Turner, assuring him that the mortgage was the first lien. In an action to foreclose the first mortgage, Turner claimed that his mortgage was entitled to priority. Both mortgages having been duly recorded, it was held upon the authority of the preceding two cases above referred to (1), that as Pierce would be estopped from claiming a priority if he had retained the mortgage, his assignee had no superior right and was also estopped; and (2), that the recording act did not aid the defendant.

The principle, therefore, as was said by MILLER, J., in delivering the unanimous opinion of the court of appeals in the case last cited, is settled beyond peradventure, that an assignee of a mortgage must take it subject to the equities attending the original transaction, and the true test is, as stated by DWIGHT, C., in *The Trustees of Union College* agt. *Wheeler* (*supra*). Such equities may exist in favor of the mortgagor or in favor of third persons.

But this general rule does not extend to equities other than such as attend the original transaction. They must exist at the time of the inception of the mortgage, at the time it springs into life. In all such cases the assignee takes subject to them, and he cannot defeat them simply by showing that he is a *bona fide* purchaser for a valuable consideration. In

all such cases it is immaterial that he had no notice of their existence at the time of the assignment.

But where a mortgage had a valid inception as a subsisting and enforceable lien in the hands of the mortgagee to the full extent of its face, equities arising thereafter stand upon a different footing, and they are to be disposed of upon such other principles of public policy, or according to such statutory requirements, as the facts of the particular case may call for.

The cases which are most familiar as falling within this class, are cases presenting conflicting claims under different successive assignments of the same mortgage by the mortgagee. They were usually determined according to the legal maxim that, where one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one whose act or culpable negligence enabled the commission of the fraud. Even the decisions of such as were determined upon the provisions of the statute relating to the proof and recording of conveyances of real estate, and the canceling of mortgages, rest to a large, but sometimes not apparent, extent upon this maxim, for the very first section of that statute is but a reiteration in the form of a legislative enactment of the great principle underlying the maxim.

The statute provides, that every conveyance of real estate shall be recorded as prescribed by it; and that every conveyance not so recorded, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, whose conveyance shall be first duly recorded (*Sec.* 1).

The term "conveyance," as thus used, embraces every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and testaments, leases for a term not exceeding three years and executory contracts for the sale or purchase of lands (*Sec.* 38).

And the term "purchaser," as thus used, embraces every

person to whom any estate, or interest in real estate, shall be conveyed for a valuable consideration, and, also, every assignee of a mortgage or lease, or other conditional estate (*Sec.* 37).

This statute applies only to successive purchasers from the same seller, and the record of the assignment of a mortgage is constructive notice only of such assignment, as against subsequent assignees of the mortgagee (*Gillig* agt. *Maass*, 28 *N. Y.*, 191; *Purdy* agt. *Huntington*, 42 *id.*, 334, 338, 347).

That an assignment of a mortgage is a conveyance within the meaning of the statute, and that, in order to protect himself against a subsequent *bona fide* purchaser of the mortgage, whose assignment may be first recorded, the first assignee, since the Revised Statutes of 1830, must record his assignment has been held in *Vanderkemp* agt. *Shelton* (11 *Paige*, 28), and *Campbell* agt. *Vedder* (3 *Keyes*, 174).

Although, therefore, as to the mere holder of a subsequent mortgage, the record of a prior mortgage is sufficient notice of its existence and of the rights of the assignee thereof, though the assignment of the prior mortgage be not recorded, and although such non-recording does not affect the rights of the holder thereof against subsequent purchasers of the premises, who are bound by the previously recorded mortgage, no matter who holds it, yet, as against a subsequent purchaser in good faith and for a valuable consideration from the mortgagee, whose assignment is first recorded, such holder's rights are postponed, because by omitting to record his assignment he failed to give what, under the statute, would have constituted constructive notice of his rights to all subsequent assignees of the mortgage.

So, it was held, that where a party takes a mortgage with notice of a prior unrecorded mortgage, and with the understanding that he is to take his mortgage subject to the previous one, he cannot claim priority; but that his *bona fide* assignee, without notice of the prior unrecorded mortgage, is not affected by the notice to his assignor, but that such *bona fide* assignee is as much protected as if no notice had ever existed

(*Jackson ex dem. Hyer and others* agt. *Van Valkenburgh*, 8 ·*Cow.*, 260).

This doctrine was recognized in *Fort* agt. *Burch* (5 *Denio*, 187) with the qualification only that the assignment must be recorded before the prior mortgage is recorded; and with this qualification it has remained good law ever since.

In *Gillig* agt. *Maass* (28 *N. Y.*, 191) it appeared that at the time the agreement was made between Walber, the original mortgagee, and Jones, as a junior mortgagee, whereby Walber undertook to waive priority in favor of Jones, Walber was no longer the owner of the mortgage, or that he had any interest therein, he having assigned the same to a *bona fide* purchaser. As he had no title whatever left, nor any apparent right to act for such *bona fide* purchaser, and the latter having done nothing to mislead Jones, it was held that, although the assignment was not at that time recorded, Jones treated with Walber at his peril.

The foregoing review of authorities sufficiently shows how discriminating and careful the courts have been in cases of conflicting equities arising after the inception and during the life of a mortgage, to cast the loss, if any, upon the party at fault.

On the other hand the protection of the statute extends only to purchasers in good faith and for a valuable consideration. Good faith is not enough without a valuable consideration parted with on the faith of the conveyance (*De Lancy* agt. *Stearns*, 66 *N. Y.*, 157), nor is the parting with such valuable consideration sufficient in the absence of good faith, which cannot be said to exist in case of notice.

The law being as stated, and it having already been shown, that the bank can derive no benefit from the mere recording of the written agreement as against Martin Frank as subsequent assignee of Wolff, whose assignment was duly recorded, the question remains to be considered whether Frank was a purchaser in good faith and for a valuable consideration, and,

if he was, upon whom, in view of all the facts of the case, the loss, which may arise, shall be cast.

At the time of the execution of the agreement between Wolff and the bank, Wolff was the true and lawful and undisputed holder of the mortgage, which he subsequently assigned to Frank, and as such he had full power to dispose of it or any specific portion of it. But no such disposition was made in favor of the bank. He parted with no part of his title. In terms, and legal effect, as already shown, the agreement was a mere personal contract collateral to, but not entering into the mortgage, or mortgage debt, or affecting the mortgaged premises or any part thereof.

Consequently, if it were necessary to determine with precision, whether this contract, which stands unrecorded in law, ran with the mortgage in such a way that Wolff could not subsequently assign, even to a *bona fide* purchaser for full value, more than his own rights, or whether such a purchaser could, by assignment, acquire title to the mortgage free and clear of the personal stipulation, such determination, in view of all the facts of this case, might be attended with difficulty, and a decision either way might, perhaps, be confronted with some apparent authority to the contrary and meet with some logical difficulties, especially as Wolff appears to have been just as innocent of intentional fraud or wrong-doing as Frank and the bank were.

But such determination is unnecessary, if Frank did not purchase in good faith and for a valuable consideration within the meaning of the law. Upon this branch of the case it seems to me that I am compelled to hold that he was not a purchaser in good faith.

Wolff had demanded from Dilger and Raichle, the makers of the mortgage, payment of the mortgage and had threatened foreclosure, when they agreed to buy it for the purpose of foreclosing it themselves. They were advised to take the assignment in the name of a third party, and they finally induced Frank, who is a step-brother of Raichle, to purchase

it for a consideration of $1,000 to be paid by two notes, payable within six and twelve months respectively. At that time the sum remaing due thereon amounted to $1,824.61. They knew of Wolff's agreement with the bank, though they had never consented to or ratified it, and they assured Frank, as the latter swears, that the mortgage he was about to buy, was all right and a first mortgage. Now, Frank swears that before he accepted the assignment and gave his notes he retained A. H. Wagner, who had been, and for all that appears then was the attorney and counsel of Dilger and Raichle, to search the title for him, and by the testimony of Strong, it is established that Wagner did search the title, and found the agreement on record as above stated, although whether he searched for Dilger and Raichle, or Frank, is not quite clear. But at all events it sufficiently appears that at about 12 o'clock at noon, on the 23d of April, 1878, at which time Frank concedes the relation of attorney and client existed between himself and Wagner, the latter had an interview with Strong, the attorney of the bank, during which the agreement between Wolff and the bank, and the errors in the recording thereof, were discussed between them, and that Frank took his assignment, and parted with the consideration therefor, subsequent to said interview and put it on record at 3.45 P. M., on that day. Wolff and Frank had not met before that day, and no communication of any importance ever passed between them either before or at the close of the transaction resulting in the assignment. So far there is no conflict in the testimony nor any room for doubt, for Wagner was not called as a witness to contradict either Strong or Frank. On the contrary it was admitted, for the purposes of the trial, that Strong's testimony is true. Frank, therefore, through his attorney, must have had knowledge of the true state of affairs, unless he was a mere dummy for Dilger and Raichle, and as such had agreed not to know any thing. He swears, however, that he purchased the bond and mortgage in question for his own account, and that at the time of such purchase and the acceptance of the assignment,

he was ignorant of the existence of any agreement whereby Wolff had consented to waive the priority of that mortgage.

That may have been so; and there being nothing in the case which compels me to disbelieve him upon this point, I shall assume that it was so, but in view of the other uncontroverted facts it is not enough. Though he may have been personally ignorant all the cases agree that the knowledge which his attorney had before the final close of the transaction, as above stated, was in law equivalent to notice to him (*Bank of the U. S.* agt. *Davis*, 2 *Hill*, 451; *Ingalls* agt. *Morgan*, 10 *N. Y.*, 178 [*pp.* 184, 185]; *Dillon* agt. *Anderson*, 43 *id.*, 231 [*p.* 238]; *The Distilled Spirits*, 11 *Wall.*, 356).

Having, therefore, purchased with notice of the rights of the bank he cannot be held to have been a purchaser in good faith, though he may have parted with a valuable consideration.

The bank is, therefore, entitled to a finding setting forth this fact; to an adjudication that it has a lien upon the mortgaged premises for the whole of the principal sum of $7,000 and the interest thereon from August 15, 1877, superior to the lien of Martin Frank by virtue of his said mortgage, and to the usual decree of foreclosure to carry this adjudication into effect.

The only remaining question relates to the liability of Raichle and Dilger, as original mortgagors, for a possible deficiency under the mortgage held by Frank. That mortgage was executed by them to Julius T. Wolff, March 31, 1868.

Subsequently, namely, by deed dated April 14, 1868, they conveyed the mortgaged premises to Charles A. Buddensick, who, by deed dated March 1, 1869, conveyed them to Frederick Eppensteiner. Both Buddensick and Eppensteiner took title, subject to Wolff's mortgage, and assumed the payment thereof. In equity, thereof, Raichle and Dilger became sureties for the payment of such mortgage from the time of their conveyance to Buddensick, and any subsequent agreement between the holder of the mortgage and the owner of the equity of redemp-

tion, or the holder of any other mortgage, altering the manner of the payment of the first-named mortgage or lessening the security afforded by the mortgaged premises for the payment of such mortgage, which was made without their consent, or remains unratified by them, releases them from the obligations of such suretyship (*Caloo* agt. *Davies*, 8 *Hun*, 222 [*affirmed by the court of appeals*]).

That the agreement between Wolff and the bank was an agreement of this character is not disputed. It was made upon a sufficient and valid consideration, and its effect was to materially lessen the security afforded by the mortgaged premises and, consequently, to increase the responsibility of the mortgagors. And having been made, as the evidence shows, without the knowledge or consent of such mortgagors and remaining unratified by them, it discharges them from all personal liability in the premises. No judgment for deficiency can, therefore, be given against them in favor of Frank.

The attorneys for the respective parties should prepare and submit findings in accordance with this opinion.