## NEW YORK SUPERIOR COURT.

DANIEL R. KENDALL, plaintiff, agt. HENRY P. NIEBUHR, AARON B. WOODRUFF and others, defendants.

*Mortgage — equitable lien — effect of — release of part of mortgaged premises.*

K. conveyed to N. certain lands fronting on One Hundred and Twenty-first street, in the city of New York, at an agreed price. At the same time it was agreed between them that N. should erect eleven houses on said lands, and that K. should advance, from time to time, as the houses progressed, to N. certain moneys towards their erection, for which advances it was further agreed that K. should receive from it a mortgage on each of the eleven houses for one-eleventh part of the money so advanced. Afterwards, when part of the moneys so to be advanced had been paid, N. executed to K. a mortgage on the whole of said property to the amount of the advances that had then been made. This mortgage, it was agreed, should be held as security till all the advances should have been made, and till the eleven separate mortgages should be executed. Subsequently the whole of the agreed advances having been made, eight of the houses were sold by N. to various parties (among them the premises in question), on each of which, except the premises in question, the respective purchasers executed a mortgage (which was transferred to K.) for the proportionate amount advanced by K., who thereupon released his prior mortgage as to such house. N. also executed like mortgages on the remaining three houses, whereupon K., in like manner, released his lien as to those, so that the entire prior mortgage was released, except as to the house in question, and that was sought to be charged only for its proportionate amount of such advances under the first mortgage. The conveyance of the premises in question was recorded in August, 1878. It was made subject "to two mortgages on said premises, amounting in the aggregate to the sum of $5,000." The first of the said two mortgages was one for $4,000, which is not in question here, and there was no other mortgage except the one in question on this house. In September following the conveyance in question, the last of the agreed advances was paid. The purchasers of the house in question claim : 1st. That the releases executed by K. of the ten other houses operated as a discharge of their house. 2d. That the receipt by him of the ten separate mortgages on the other houses, which, in the aggregate, were for a larger sum than the original mortgage, but were less by the sum which was the proportionate share of the premises in question, and which is sought to be recovered of the advances made, if the last payment made subsequent to the date of the deed to the

Kendall agt. Niebuhr.

grantees of the premises in question was deducted from the aggregate amount of said ten mortgages.

*Held*, that the mortgage was a valid and subsisting lien on the premises in question for the amount claimed, to wit, the proportionate amount of the advances made, deducting the amount of the last payment on account of the advances from the aggregate of the separate mortgages, and deducting the remainder from the general mortgage left the sum claimed as due.

The general rule that after alienation of a part of the mortgaged premises the remainder becomes primarily liable for the whole mortgage and that the portions alienated are liable only in the inverse order of alienation, and then only to the extent remaining due when the premises precedently liable have been exhausted is *fully recognized.*

But the rule of charging lands in the inverse order of alienation or holding a portion remaining apparently covered by a mortgage discharged in consequence of the release by a mortgagee with notice of other portions which were primarily liable is a *mere* rule in equity    The release to a subsequent purchaser is not a technical discharge of the lands previously conveyed. Neither is it an equitable release or discharge, unless upon the principles of natural equity and justice it ought thus to operate.

A mortgagee is not bound, at his peril, to ascertain if the mortgaged premises have been aliened or mortgaged subsequent to his mortgage before releasing a part of the mortgaged premises. Recording a conveyance is not notice to him ; it is notice only to *subsequent* purchasers in good faith and for a valuable consideration.

Where a mortgagee, before releasing part of his mortgage security, employs an attorney to search the title and prepare the release and such attorney found of record certain conveyances, such knowledge is equivalent to knowledge by the mortgagee even if the attorney failed to communicate such information to his client.

R., under his contract with N. was compellable to execute the release upon recovering the separate mortgages. The record of the mortgage covering the whole of the eleven houses was notice to the purchasers of the premises in question of a lien which, under certain circumstances, might have been enforced against this lot for its entire amount. If they had not notice of the contract between K. and N., they were put upon their inquiry in regard to it and by due diligence could have ascertained its terms.

The contract between K. and N. constituted an equitable mortgage and gave K. in equity an equitable lien which could be enforced against subsequent purchasers to the extent actually due under it.

*Special Term, October,* 1879.

*William McDermot*, for plaintiff.

*Edward P. Flint*, for defendants Woodruff, Conklin & Bayer.

FREEDMAN, *J.* — This is an action for the foreclosure of a mortgage to the extent of a balance of $1,770 claimed to be still due upon it. The mortgage originally covered a number of lots, but foreclosure is prayed for only against a certain lot owned by the defendants Woodruff, Conklin & Bayer, who are the only litigating defendants.

The questions involved are somewhat novel and interesting, as well as complicated, and in consequence thereof they received special attention.

On the 6th of October, 1877, Daniel R. Kendall made a deed to Niebuhr of a number of lots on One Hundred and Twenty-first street, in the city of New York, presenting a frontage on said street of 187 feet, and received from Niebuhr the latter's bond and mortgage on said lots for $29,920, which was the purchase-price. Contemporaneously therewith the said parties entered into a written contract whereby Niebuhr agreed to erect on said lots eleven houses, each of the dimensions of seventeen by forty-five feet, as therein provided, and to have them completed before May 1, 1878, and whereby Kendall agreed to make advances, as follows, viz:

"When all the houses are enclosed, girders and posts in cellar, leaders connected with sewer, bridging done, window frames in, coping on roof, and chimneys, skylight and scuttle on, the roof on all completed, an advance to be made on each house of $1,200.

"When floors are laid, studding, browning and scratch coating done, sewer connections made, grounds or jambs set for doors and windows in all the houses, $500.

"When the hard finishing and trimming is done, stairs up, sashes hung and glazed, mantels in, brown stone stoops completed, and doors all hung in all the houses, $600.

"When said houses are fully completed, including warming apparatus, grates and mantels, flagging and all yard work done, front and rear, in each house, $750."

The contract further provided as follows, viz: "For each of the above advances the said Kendall agrees to receive the bond and mortgage of the said Neibuhr, with the signature of his wife, payable on or before May 1, 1878, with interest at seven per cent, and usual interest, tax, assessment and insurance clause, provided all the said houses and lots are free from all grants, mortgages, liens, judgments or otherwise, at the time the said payments are due. Interest on all said mortgages mentioned in this agreement, with cost of drawing and recording the same, and all taxes and assessments then confirmed, to be taken out of last mentioned payment. On the final completion of all of said houses, the said Kendall agrees to receive the bond and mortgage (containing usual clauses) of said Niebuhr for $5,770 on each house and lot — being $2,720 for the cost of the lot and $3,050 for the advance making together $5,770 — payable, with seven per cent interest semi-annually, in one year if negotiated with an incorporated company, or three years if otherwise; the said Niebuhr to make the said bonds and mortgages payable to such parties as the said Kendall may direct. The said Kendall hereby agrees (the said mortgage for $5,770 having been recorded) to remove and cancel all other mortgages mentioned in this agreement, provided that each of said houses and lots are free from all incumbrances by grants, mortgages, liens, judgments or otherwise. The said bond and mortgage for $5,770 each to be divided at the option of said Kendall into two mortgages in aggregate for the said sum of $5,770," &c., &c.

On May 16, 1878, the following state of facts existed:

| | |
|---|---:|
| Kendall had advanced to Niebuhr the first two installments called for by the contract, amounting, in the aggregate, to. | $18,700 |
| Which, with the price of the lots, viz | 29,920 |
| Made the sum of | $48,620 |
| Niebuhr had executed to the New York Life Insurance Company eleven mortgages, one on each house and lot, and each for $4,000, for which Kendall had received the money upon a surrender, as may be assumed, of his purchase-money mortgage | 44,000 |
| This left a balance due to Kendall of | $4,620 |
| Kendall then made to Niebuhr the third advance called for by the contract, amounting to | 6,600 |
| Which made the balance due to Kendall on that day | $11,220 |

For this amount the mortgage in suit was executed by Niebuhr and wife, and the same was duly recorded May 17, 1878, as in the complaint alleged. It was made payable July 1, 1878, and covered the entire premises, subject, however, to the eleven mortgages held by the New York Life Insurance Company. From the description of the premises which was used it does not appear into how many lots the 187 feet of ground described were laid out, but at the end of the description the following provision occurs: "In case of foreclosure of this mortgage all to be sold in one parcel, or in single lots, at option of said Daniel R. Kendall."

Kendall also testified that it was further agreed that this mortgage was to be held by him as security until he got his final mortgages, namely, eleven second mortgages of $1,770 each, and that upon the receipt of those it was to be discharged.

Niebuhr then went on with the erection of the houses, and the last payment under the contract, amounting to $8,250, was made to him by Kendall after the 26th of September, 1878.

As the houses neared completion Niebuhr made attempts to effect sales, and by October, 1878, he had sold eight of them with the land upon which each stood, respectively. Among them was one which was sold to the defendants, Woodruff, Conklin & Bayer, by deed recorded August 23, 1878, and upon conditions which will be specially noticed hereafter. As to the other seven, each house and lot was sold subject to a first mortgage of $4,000, held by the New York Life Insurance Company, and the purchaser in each case, as a part of the consideration paid, executed a second mortgage for $1,770, which was turned over to Kendall. Upon each of the three houses and lots remaining unsold, Niebuhr executed and delivered to Kendall a second mortgage for the same amount.

The ten mortgages thus received by Kendall were, by agreement between him and Niebuhr, applied in repayment of the last advance of $8,250 made by Kendall under the contract and then in payment to the extent of $9,450 of the mortgage of $11,220.

Upon the receipt of each of the said ten second mortgages, Kendall released the premises covered by it, respectively, from the lien of the general mortgage.

The consequence of this course of dealing was that in October, 1878, every house and lot had been released, except the one purchased by the defendants, Woodruff, Conklin & Bayer, against which the general mortgage constituted a lien to the extent of $1,770.

To foreclose that mortgage to the extent named against said premises, the present action was commenced in April, 1879.

Woodruff, Conklin & Bayer, as already stated, purchased the house and lot in question in August, 1878. The deed to them bears no date, but it was recorded August 23, 1878.

For a consideration therein expressed of "one dollar (and other good and valuable consideration)" it conveys the premises in question subject "to two mortgages on said premises amounting in the aggregate to the sum of $5,000." By their answer they admit that this sum had reference to the mortgage of $4,000, held by the New York Life Insurance Company, and to the proportionate one-eleventh share of the principal sum of the mortgage of $11,220, and they also admit the option secured to Kendall by the last-mentioned mortgage as to the manner in which, in case of foreclosure, the sale is to be made.

They insist, however, (1) that the plaintiff has precluded himself from enforcing the mortgage against the house and lot in question for the amount of $1,770, or any amount whatever, because the ten releases executed by him, operated as a discharge of their house and lot from the lien of the mortgage, and (2) that in any event the receipt of the ten second mortgages operated as a payment and satisfaction of the mortgage of $11,220.

*As to the first ground :* The general rule undoubtedly is, that when a mortgagor sells a portion of the lands which the mortgage covers, those which he retains become primarily liable for the satisfaction of the debt, and that those which he has conveyed are answerable only for an eventual deficiency, and, as a necessary consequence, that a similar equity prevails between purchasers, so that distinct parcels or lots of the mortgaged lands, which have been conveyed at different times to different purchasers, are chargeable in the inverse order of their alienation, and must be sold in that order under a decree. The equities which may thus have been created between a purchaser and the mortgagor, or between several purchasers, the mortgagee, when he has a knowledge of the facts, is not permitted to disregard or to disturb, and, with this knowledge, he acts at his own peril when he releases from the lien of the mortgage any portion of the lands which it embraces. If the lands released are primarily liable, and are of sufficient value.

to satisfy the debt, those previously conveyed are wholly discharged, and in no case can they be charged with any larger sum than the proportion of the debt that may remain unsatisfied when the value of the lands released has been applied and exhausted (*Howard Ins. Co.* agt. *Halsey*, 4 *Sandf.*, 565; *affirmed*, 4 *Seld.*, 271; *Gouverneur* agt. *Lynch*, 2 *Paige Ch. R.*, 300; *Schuyler* agt. *Teller*, 9 *Paige Ch. R.*, 173).

The existence of this equity does not depend upon the nature or extent of the consideration received by the mortgagor for his conveyance, or by the mortgagee for his release, but, before the obligation arises on the part of the mortgagee to regard it, his conscience must be affected by knowledge of the facts upon which the equity depends, or by notice sufficient to put him upon inquiry (*Stuyvesant* agt. *Hall*, 2 *Barb. Ch. R.*, 151; *Guion* agt. *Knapp*, 6 *Paige Ch. R.*, 35).

The mortgagee is not bound, at his peril, to ascertain whether any of the mortgaged lands have been aliened or subsequently incumbered, when applied to to release part of the lands bound by his mortgage, nor is the recording of the mortgagor's deed to the purchaser notice to the mortgagee of the fact of the conveyance, because, by the terms of the statute, the constructive notice, which arises from the recording of a conveyance of real estate, is limited to subsequent purchasers in good faith, and for a valuable consideration of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded (*Howard Ins. Co.* agt. *Halsey*, 4 *Seld.*, 271; *Stuyvesant* agt. *Hall*, 2 *Barb. Ch. R.*, 151).

In the case at bar it sufficiently appears that Kendall not only had sufficient notice to put him upon inquiry, but also knowledge of the conveyance to Woodruff, Conklin & Bayer. According to his own testimony he retained, before accepting the ten mortgages, William McDermot, an attorney, to make the necessary searches and to prepare the releases; and McDermot did make the searches, found the conveyances on record and in due time informed Kendall of the result. True, Kendall says that he cannot recollect that he was informed of the

conveyance to Woodruff, Conklin & Bayer, specifically, and
that he did not pay much attention to whom the houses
and lots had been sold. But the deed to Woodruff, Conk-
lin & Bayer having been duly recorded the presumption is
that McDermot, in the discharge of his professional duty,
found it with the rest, and this presumption became con-
clusive by the omission of McDermot, when called as a
witness, to give testimony to the contrary. This being so
the knowledge which McDermot had, as attorney, before the
delivery of the releases, was, in law, equivalent to knowledge
on the part of Kendall, even if the facts were not communi-
cated to Kendall (*Bank of the U. S.* agt. *Davis*, 2 *Hill*, 451 ;
*Ingalls* agt. *Morgan*, 10 *N. Y.*, 178 [*pp*. 184, 185] ; *Dillon*
agt. *Anderson*, 43 *N. Y.*, 231 [*p*. 238] ; *The Distilled Spirits*,
11 *Wall.*, 356 ; *Bank for Savings* agt. *Frank*, 56 *How. Pr.*,
403 [*p*. 414]).

If, therefore, the case at bar fell within the general rule
stated, I should reopen the case for the purpose of ascertain-
ing the order of the alienation of the different houses and
lots, of which there is no evidence, and their value at the time
of their respective release, as to which I excluded testimony.
But I do not think that the case falls within the rule, and,
consequently, the pursuit of inquiry in the directions men-
tioned is immaterial. For the same reason it is immaterial
whether, in October or November, 1878, there was, or was
not, any thing due by Niebuhr to Woodruff, Conklin & Bayer
for materials or other things supplied on all or some of the
houses, or whether or not there were taxes upon the house and
lot purchased by them at the time of the purchase.

The rule of charging the lands in the inverse order of their
alienation, or of holding a portion remaining apparently cov-
ered by a mortgage discharged in consequence of the release,
by the mortgagee with notice, of the other portion which was
primarily liable, is a mere rule in equity. The release to a
subsequent purchaser is not a technical discharge of the lands
previously conveyed from the lien of the incumbrance.

Neither is it an equitable release or discharge, unless upon the principles of natural equity and justice it ought thus to operate against the party making the release to the subsequent grantee (*Patty* agt. *Pease*, 8 *Paige Ch. R.*, 278).

In all the reported cases in which the general rule has been enforced against the mortgagee, the latter, when applied to to release part of the lands covered by his mortgage, was at liberty to grant or refuse the application. In the present case the release of the ten houses and lots was not a voluntary one, but one which, under the contract, Kendall was bound to give. If he had refused, Niebuhr or his assigns could have compelled it by action. Nor is the remaining house and lot sought to be held for more than, by the terms of the contract, it was liable for as its equal proportion of the price of the lots and the moneys advanced to build the houses. Both the contract and the mortgage of $11,220 were anterior to the deed taken by the litigating defendants, and a portion of the money advanced after the delivery of the said deed was expended in finishing the house bought by them. The record of the mortgage of $11,220, to which Woodruff, Conklin & Bayer took subject, was notice to them of the existence of a lien, enforceable under certain circumstances, against their house and lot to the extent of the whole sum named in it; and though they may not have had actual notice of the precise amount due, or claimed to be due, under it, nor of the terms of the contract, yet, by the exercise of due care and diligence, they could readily have obtained the necessary information. Moreover, within the principles laid down in *Payne* agt. *Wilson* (74 *N. Y.*, 348), and wholly independent of the fact that it was agreed that Kendall should have the right to hold on to the mortgage of $11,220 until he got all the mortgages to which he was entitled, from which fact it may be inferred that the intention of the parties was that said mortgage, in case of partial payment, should be kept alive to cover subsequent advances under the contract, not otherwise secured, up to the amount named in it, the contract itself

constitutes an equitable mortgage, and, in equity, a specific lien upon the houses and lots which, unless released in fact, can be enforced by Kendall against any of the subsequent purchasers from, or creditors of, Niebuhr to the extent of the amount actually due under it.

Under these circumstances Kendall has the prior equity, and it would be inequitable to enforce the rule referred to against him.

*As to the second ground:* Upon this branch of the case the testimony is, that in about the month of October, 1878, a settlement took place between Kendall and Niebuhr, in the course of which Kendall accepted the ten mortgages referred to (1) in satisfaction of the amount of $8,250, advanced by him under the contract subsequent to the mortgage of $11,220, and (2) in payment of the sum of $9,450 on account of the last mentioned mortgage. It certainly was competent for the parties to make this settlement, which was not only fair and equitable in itself, but according to contract; and specific application having been made in the course thereof, the court cannot step in and say that a different application must be made. Woodruff, Conklin & Bayer not only took, as they admit, subject to the proportionate share of the house and lot under the mortgage, without ascertaining the amount of such share, while the record of the mortgage charged them with notice of its existence as a lien to the possible extent of $11,220, but, for reasons already given, they also took subject, whether considered as subsequent purchasers from, or creditors of Niebuhr, to the equitable mortgage and specific lien in equity of Kendall under his contract, and all that at a time at which the house purchased by them was in an unfinished state. Much that has been said in the discussion of the first point is also applicable to this branch of the case, but to avoid unnecessary repetition it is sufficient to say that the case is not one in which a subsequent debt has been tacked to the original mortgage and in which that mortgage, with the debt thus tacked on, is sought to be enforced

Boston, Hoosic Tunnel & W. R. R. Co. agt. Troy & Boston R. R. Co.

beyond the amount specifically secured by it against subsequent *bona fide* purchasers or creditors for value.

My final conclusion is, that, in any aspect of the case, the plaintiff has the prior equity as against the litigating defendants, and that he is entitled to the usual judgment of foreclosure and sale as prayed for in the complaint.